Argued and submitted May 1, decision of the Court of Appeals reversed; challenged LCDC rules upheld August 7, 1997

# LANE COUNTY,
*Respondent on Review,*

*v.*

# LAND CONSERVATION AND DEVELOPMENT COMMISSION,
*Petitioner on Review,*

*and*

# 1000 FRIENDS OF OREGON,
*Petitioner on Review.*

(CA A83932; SC S43440, S43441)

942 P2d 278

F. Blair Batson, Portland, argued the cause and filed the brief for petitioner on review 1000 Friends of Oregon.

Stephanie L. Striffler, Assistant Attorney General, Salem, argued the cause for petitioner on review Land Conservation and Development Commission. With her on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David B. Williams, Office of Legal Counsel, Lane County, Eugene, argued the cause and filed the brief for respondent on review.

Lawrence Watters and Bart Brush, Portland, filed a brief for *amicus curiae* Northwest Environmental Defense Center.

Frederick A. Batson, of Gleaves Swearingen Larsen Potter Scott & Smith LLP, Eugene, filed a brief for *amici curiae* Raymond Sims Baum, Robert Repine, and William and Bonnie Thielman.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this administrative law case, the Land Conservation and Development Commission (LCDC) and 1000 Friends of Oregon seek review of a Court of Appeals' decision that invalidated certain LCDC rules on the ground that they are inconsistent with a statute, ORS 215.213, and, therefore, that LCDC exceeded its statutory authority by promulgating them. *Lane County v. LCDC*, 138 Or App 635, 910 P2d 414, *modified on recons* 140 Or App 368, 914 P2d 1114 (1996). We conclude that LCDC's rules are not inconsistent with that statute in any manner argued to the Court of Appeals. Accordingly, we reverse the decision of the Court of Appeals and uphold the challenged rules.

LCDC adopted the challenged rules to protect agricultural land that qualifies by soil type as "high value farmland," the state's most productive farmland.[1] The rules restrict or prohibit certain uses on high value farmland if it is located within an area zoned for "exclusive farm use" (EFU). ORS 215.213 provides that those same uses "may be established" on EFU land. This case concerns whether there is a conflict between the LCDC rules and the statutes in that set of circumstances, requiring that the rules be invalidated.

Resolving the question whether LCDC exceeded the scope of its statutory authority in promulgating the regulations requires us to determine how the legislature intended two separate chapters of the Oregon Revised Statutes—ORS chapters 197 and 215—to interact. To that end, some background discussion of those chapters is helpful.

In ORS chapter 197, the legislature, concerned with problems resulting from "uncoordinated land use," created LCDC to ensure a "systematic decisional [land use] process based on consideration of all relevant facts, affected interests and public policies." *1000 Friends of Oregon v. Wasco County Court*, 299 Or 344, 347, 703 P2d 207 (1985); ORS 197.005. The legislature directed LCDC to adopt by rule or by goal any

---

[1] Under OAR 660-33-020, land qualifies as "high value farmland" based primarily on its soil type, as classified by the Federal Soil Conservation Service. OAR 660-33-020(8); ORS 215.710.

statewide land use policies that it considered necessary to carry out the laws that it was responsible for administering, ORS 197.040(1)(c)(A), and to adopt "goals and guidelines for use by state agencies, local governments and special districts in preparing, adopting, amending and implementing * * * comprehensive plans." ORS 197.225; *see also* ORS 197.240 and 197.245 (setting forth a hearing process for consideration, adoption and amendment of goals). The legislature directed LCDC, in preparing, adopting, and amending goals and guidelines, to "[g]ive consideration" to multiple "areas and activities," including agricultural land. ORS 197.230-(1)(c)(J).[2]

Pursuant to its mandate, LCDC adopted a total of 19 statewide planning goals, with implementing guidelines, that serve as the standards governing land use planning in Oregon. Among those goals is Goal 3, OAR 660-15-000(3), which specifically is directed at preserving and maintaining agricultural lands. As originally worded, that goal recognized only one class of agricultural land and required that all agricultural land use be regulated through the designation of areas zoned for exclusive farm use (EFU). Statewide Land Use Planning Goal 3 (1975).

We turn now to ORS chapter 215, the other chapter of the statutes that is pertinent to our inquiry. While ORS chapter 197 establishes a general, statewide, comprehensive land use framework and sets up an administrative agency to administer it, ORS chapter 215 deals with the authority of counties to zone land. That authority of the counties to zone is subordinate to, *inter alia*, the statewide land use planning goals. *See, e.g.,* ORS 197.175(2) (counties must prepare comprehensive land use plans in compliance with goals); ORS 215.050 (county adoption of comprehensive plan, together with zoning ordinances to implement plan); ORS 215.203(1) (authorizing creation of EFU zones "when such zoning is consistent with the [county's] comprehensive plan").

---

[2] As originally adopted in 1973, ORS 197.230(1)(c)(J) stated that LCDC should give "priority" consideration to agricultural land. ORS 197.230(2)(j) (1973 Edition). After LCDC adopted its original set of land use goals, the legislature amended chapter 197 to provide that LCDC should give equal weight to the goals and deleted the word "priority" from ORS 197.230(1)(c)(J). Or Laws 1981, ch 748, §§ 17, 20.

In 1983, ORS chapter 215 was amended by the adoption of so-called "marginal lands" legislation, which authorized counties to designate certain lands located within EFU zones as "marginal" and to regulate uses in such areas under relaxed statutory criteria. Or Laws 1983, ch 826, § 3.[3] Two counties, Lane and Washington, elected to participate in the marginal lands program. ORS 215.213, one of the statutes at issue in this case, allows those "marginal lands counties" to permit the establishment of a certain range of "non-farm" uses, such as schools and farm dwellings, within EFU zones. ORS 215.213(1). Subsection (2) of that statute contains a list of uses that "may be established" in EFU zones "subject to ORS 215.296." ORS 215.296 in turn provides that counties may allow certain uses based on locally adopted criteria.

In 1992, after years of analysis of uses that historically had been approved in EFU zones, LCDC concluded that the use of EFU zones was not protecting agricultural land adequately. Accordingly, pursuant to its authority under ORS chapter 197, LCDC amended Goal 3 to eliminate the requirement that all agricultural land be regulated through EFU designation. In place of EFU zones, LCDC created three new categories of agricultural land—"small scale resource land," "important farmland," and "high value farmland"— and provided for varying levels of regulation as to the uses allowed for each category. LCDC also adopted administrative rules consistent with amended Goal 3, establishing the procedure for designating agricultural land in each of the three categories and identifying the uses that would be permitted on each category of land.

Although the amended Goal 3 and its implementing rules continued to recognize Lane and Washington County's authority to designate and regulate marginal lands, the goal and rules also allowed those two marginal lands counties to designate their marginal lands as "small scale resource land," as that term was used in amended Goal 3, without

---

[3] The 1983 legislation also amended ORS chapter 197 to direct LCDC to amend its statewide land use Goal 3 (agricultural lands) to authorize counties to designate land as marginal land if it met various specified criteria. Or Laws 1983, ch 826, § 2. Consequently, LCDC soon amended Goal 3 to recognize the marginal lands designation, consistent with the marginal lands statute. Statewide Land Use Planning Goal 3 (1983).

undergoing the justification process for such a designation that was applicable to all other counties. Proposed OAR 660-33-040(2)(e) (1992). The two counties then could avail themselves of the more lenient land use regulations applicable to small scale resource land. *See* proposed OAR 660-33-040(2) (1992) (so providing). If either county elected to follow that course, however, it would be forced to implement the requirements for "high value" and "important" farmland, proposed OAR 660-33-050(1)(b) (1992), and to withdraw from the marginal lands program, proposed OAR 660-33-150(2) (1992). The rules implementing amended Goal 3 were scheduled to go into effect in August 1993. Proposed OAR 660-33-160(1) (1992).

The amended goal and rules proved to be controversial and, before the new rules could become effective, the legislature intervened by enacting House Bill 3661 (Or Laws 1993, ch 792). That enactment had four major effects. First, it abolished two of the three new categories of agricultural land, small-scale resource land and important farmland, and recognized only "high value farmland." ORS 215.304(1); ORS 215.700 *et seq.*[4] The enactment required LCDC to amend its rules to conform to the new legislation, ORS 215.304(2), and provided that all regulations "inconsistent" with the 1983 marginal lands laws or the new statutory provisions pertaining to high value farmland "shall not be implemented or enforced" and shall have "no legal effect." ORS 215.304(3). Second, the enactment authorized LCDC to review comprehensive plans for conformity with the amended goals and regulatory requirements related to high value farmland. ORS 197.045(6). Third, it established "lot of record" provisions, *i.e.*, grandparent provisions allowing local governments to permit persons to build dwellings on certain agricultural and forest land if, among other things, the parcel was owned by the current owner by January 1, 1985. ORS 215.705. Finally, the enactment discontinued the marginal

---

[4] ORS 215.304(1) refers to "small-scale farmland" and "secondary land," rather than to "small-scale resource land" and "important farmland." The parties are in agreement, however, that, despite the differences in nomenclature, the legislature was referring to those two newly-recognized categories of farmland. We use the terms used by the statute, *viz.*, "small- scale farmland" and "secondary land," hereafter, because it is that statute that we are construing.

lands program, although it allowed those counties that already had elected to become marginal lands counties to continue as such if they did not opt to use the new "lot of record" provisions. ORS 215.316.

After the 1993 legislation was enacted, LCDC amended Goal 3 and its regulations once again, deleting all references to "small-scale resource land" and "important farmland," but recognizing and defining the category of "high value farmland." *See generally* OAR chapter 660, division 33 (1994) (containing the pertinent rules). The 1994 Goal 3 and implementing regulations allow the marginal lands counties to continue to designate lands as marginal lands, unless they avail themselves of the "lot of record" provisions of ORS 215.705 to 215.750. OAR 660-33-020(8)(h). In addition, all counties, including the marginal lands counties, may continue to authorize the uses previously allowed under ORS 215.213 and ORS 215.283 on EFU land. The 1994 rules restrict or prohibit some uses on high value farmland that "may be established" on EFU land under ORS 215.213 and 215.283.[5]

Lane County (the county), one of the two marginal lands counties, brought the present proceeding in the Court of Appeals, challenging the validity of the 1994 LCDC rules that restrict or prohibit otherwise permissible uses on that specific kind of farmland within an EFU zone, as those rules apply to the marginal lands counties. *See* ORS 183.400 (procedures for original jurisdiction in Court of Appeals to review validity of certain rules). The county contended that the rules are inconsistent with ORS 215.213 and, therefore, are invalid. It relied specifically on part of the 1993 legislation, ORS 215.304(3), which provides that LCDC rules "inconsistent" with various statutes, including ORS 215.213, "shall not be implemented or enforced," and shall have "no legal effect." The county argued, and the Court of Appeals agreed, that, because the 1994 rules expressly prohibit with respect to one category of farmland what the statute allows with respect to

---

[5] For example, under ORS 215.213 (1)(a) and (b) and ORS 215.283(1)(a) and (b), counties would have the authority to permit schools and churches on EFU land. The uses are prohibited, however, if that land is classified as high value farmland. OAR 660-33-120.

the broader range of land zoned EFU, those rules are "inconsistent" with the statute and, therefore, LCDC exceeded its statutory authority in promulgating them. *Lane County*, 138 Or App at 645.

LCDC and 1000 Friends of Oregon seek review of the Court of Appeals' decision. LCDC argues that it has broad policy-making and regulatory authority under ORS chapter 197 and that nothing in ORS 215.304(3) restricts any authority that LCDC has under ORS chapter 197 and Goal 3 to protect agricultural resources. Rather, LCDC argues that, when subsection (3) of ORS 215.304 is read together with subsections (1) and (2) of that statute, it will be seen that subsection (3) simply clarifies the effect of ORS 215.304 as a whole on the 1992 rules, which LCDC had adopted but not yet implemented at the time the 1993 legislation was enacted. Moreover, both 1000 Friends and LCDC argue that, in any event, the 1994 regulations are not inconsistent with ORS 215.213 but, instead, are supplemental to that statute, insofar as they continue to permit the full range of uses described in ORS 215.213 on agricultural land, so long as that land is not high value farmland.

In interpreting ORS 215.304(3), our task is to determine the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We start with an analysis of the text and context of the provision as the best evidence of the legislature's intent. *PGE*, 317 Or at 610-11. In construing the text and context, we also apply rules of statutory construction that bear directly on how to read the text. *Ibid*. If the legislature's intent is clear after that analysis, further inquiry is unnecessary. *Ibid*.

ORS 215.304 provides:

"(1) The Land Conservation and Development Commission shall not adopt or implement any rule to identify or designate small-scale farmland or secondary land.

"(2) Amendments required to conform rules to the provisions of subsection (1) of this section and ORS 215.705 to 215.780 shall be adopted by March 1, 1994.

"(3)   Any portion of a rule inconsistent with the provisions of ORS 197.247 (1991 Edition), 215.213, 215.214 (1991 Edition), 215.288 (1991 Edition), 215.317, 215.327 and 215.337 (1991 Edition) or 215.705 to 215.780 on March 1, 1994:

"(a)   Shall not be implemented or enforced; and

"(b)   Has no legal effect."

The Court of Appeals held that ORS 215.304(3) merely restates a familiar principle of administrative law that an agency may not adopt rules inconsistent with an applicable statute. *Lane County*, 138 Or App at 640. *See, e.g., Sunshine Dairy v. Peterson*, 183 Or 305, 326-27, 193 P2d 543 (1948) (so holding). Lane County argues more directly that the express wording of the subsection requires examination of "any portion of a rule" that is inconsistent with, among other things, ORS 215.213. The county essentially concedes that, but for subsection (3), LCDC would have the authority to promulgate rules restricting permissible uses of EFU land, even for marginal lands counties. According to the county, however, the legislature removed that authority when it enacted ORS 215.304(3), because that subsection expressly limits LCDC's rulemaking authority.

■      We disagree with the county. The text and context of ORS 215.304(3) make clear that, in enacting it, the legislature had a much more limited purpose in mind. First, the context of ORS 215.304 includes the fact, discussed earlier, that LCDC's controversial regulations establishing three new categories of agricultural land (small scale resource land, important farmland and high value farmland) were scheduled to become effective soon. The legislation at issue here was enacted before the effective date of the regulations, apparently in direct response to those regulations, inasmuch as one of its primary effects is to abolish two of the three newly-created categories.

■      Second, we do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole. *I`  ̵is v. Wasco IED*, 286 Or 261, 267, 593 P2d 1152 (1979).

ORS 215.304(1) prohibits LCDC from adopting or implementing rules regarding both small scale farmland and secondary land. In other words, the statute makes clear that LCDC could not implement the rules that were then scheduled to go into effect and that would have allowed counties to replace their marginal lands programs with the small scale farmland and secondary land program. Nor could LCDC adopt other rules regarding small scale farmland and secondary land. Significantly, however, subsection (1) does not mention high value farmland. Subsection (2) then sets a timetable for revisions to LCDC's regulations, giving that agency until March 1, 1994, to adopt new rules that conform to subsection (1) and to the statutory provisions dealing with lot of record and high value farmland set out in ORS 215.705 to ORS 215.780.

It is in this context that we examine subsection (3). Subsection (3) provides that "[a]ny portion of a rule inconsistent with the provisions of ORS 197.247 (1991 Edition), 215.213, 215.214 (1991 Edition), 215.288 (1991 Edition), 215.317, 215.327 *and* 215.337 (1991 Edition) *or* 215.705 to 215.780 on March 1, 1994" shall not be implemented or enforced. (Emphasis added.) The statutory references before the word "or" are to the marginal lands statutes.[6] The phrase following that conjunction, "ORS 215.205 to 215.780," refers to the new lot of record and high value farmland statutes. The references to the marginal lands statutes are linked together with the conjunctive "and," indicating that the marginal lands statutes are to be considered as a group. That choice of wording militates against the county's view that the legislature intended subsection (3) specifically to preclude limitations on uses otherwise permissible under ORS 215.213. Rather, when considered in light of the fact that LCDC attempted through the 1992 regulations to replace the marginal lands program with a new scheme, subsection (3) directly supplements subsection (1), which abolished the

---

[6] *Former* ORS 197.247 permitted designation of marginal lands. ORS 215.213 and *former* ORS 215.214 allowed certain uses on land zoned for exclusive farm use in marginal lands counties. *Former* ORS 215.288 dealt with the impact of a county's election between marginal lands provisions and the lot of record provisions in EFU zones. ORS 215.317, ORS 215.327, and *former* ORS 215.337 governed designation of and uses on marginal lands.

small scale farmland and secondary land categories, and reflects a more generalized intent to prevent LCDC from taking a similar action again. In any event, nothing in the wording of subsection (3) indicates an intent to strip LCDC of any authority that it otherwise would have to regulate agricultural lands.

Moreover, subsection (3) specifically invalidates any portion of a rule that is inconsistent with either of the two specified statutory schemes *on March 1, 1994*, the date by which the regulations were to be amended as provided in subsection (2). When all three subsections of ORS 215.304 are read together, it is apparent that subsection (3) merely clarifies the effect of the old rules during the interim period before the March 1, 1994, deadline: if, as of the March deadline, the rules conflicted with the marginal lands statutes or the new high value farmland statutes, they could not be enforced. We do not read subsection (3) to reflect a legislative intent to impose additional or new restrictions on LCDC's authority to protect high value farmland, beyond any restrictions arising out of the aforementioned general principle of administrative law that agencies may not adopt rules inconsistent with applicable statutes.

This interpretation also is supported by the broader context of ORS 215.304. Far from directing LCDC not to regulate high value farmland, the legislature explicitly has recognized in ORS 215.700 the importance of protecting the state's more productive resource land. The legislative emphasis on high value farmland is confirmed still further in ORS 197.045(6), wherein the legislature has charged LCDC with reviewing "comprehensive plan and land use regulations related to the identification and designation of high-value farmland pursuant to" this Act. Based on the foregoing, we conclude that the legislature's intent in enacting ORS 215.304(3) is clear and limited. That subsection speaks only to the question of the continued effectiveness of a certain group of LCDC regulations after March 1, 1994. It follows that the broader reading given to that subsection by the Court of Appeals was incorrect.

■ Having concluded that subsection (3) does not restrict the authority that LCDC otherwise would have to

formulate rules for the protection of agricultural lands, we still must address whether LCDC has exceeded the scope of its authority by protecting high value farmland through regulations that restrict uses that otherwise would be permissible under ORS 215.213 for that category of land. For the reasons that follow, we conclude that LCDC has not exceeded its authority.

The legislature created LCDC to ensure consistent and comprehensive land use planning and to promote coordinated statewide land conservation and development. ORS 197.005. To accomplish those purposes, the legislature invested LCDC with broad policy-making and regulatory authority. It directed LCDC to set goals and standards for land use and declined to set the land use planning goals itself. As the court stated in *1000 Friends v. LCDC*, 292 Or 735, 744, 642 P2d 1158 (1982):

> "The legislature might have enacted permanent goals, but it chose not to. Rather, it enacted broad policies and delegated to a new agency, LCDC, legislative authority to refine and particularize those policies by adoption of land use goals and rules."

The "broad policies" enacted by the legislature direct LCDC to consider various "areas and activities" in preparing and adopting the goals and guidelines including, among others, estuarine areas, wetlands, beaches and dunes, flood plains and areas of geologic hazard, unique wildlife habitats, and agricultural land. ORS 197.230. In addition, the legislature has recognized the need to protect the state's most productive farmland. ORS 197.045(6).

LCDC is authorized to adopt, by rule or by goal, "*any* statewide land use policies that it considers necessary to carry out ORS chapter[ ] * * * 197." ORS 197.040(1)(c) (emphasis added). Given LCDC's mandate under ORS chapter 197 to protect agricultural lands generally, and high value farmland in particular, we hold that, in the absence of any evidence of a contrary legislative intent, LCDC has the authority pursuant to ORS chapter 197 to adopt goals and rules to provide special protection for high value farmland within the broader range of farmlands zoned EFU.

The final question remaining is whether the statutes permitting certain nonfarm uses on land zoned EFU, particularly ORS 215.213, authorizing the marginal lands counties to permit nonfarm uses on EFU land, demonstrate such legislative intent. Stated another way, we must decide whether LCDC's regulations are consistent with ORS 215.213 and, therefore, are within the scope of the agency's authority to promulgate.

At the outset, we note that LCDC's regulations have long provided that a county's decision to place land inside an EFU zone does not thereby insulate that land from regulations designed to implement the goals adopted under ORS chapter 197. For example, an otherwise permitted use of land zoned for exclusive farm use could be prohibited or limited if that land happened also to be a wetland, a wildlife habitat, a historic site, or another resource protected under Goal 5 (Natural Resources, Scenic and Historic Areas, and Open Spaces). OAR 660-16-010. This court has not addressed the question whether such restrictions or prohibitions exceed the scope of LCDC's authority, although the Court of Appeals has assumed that such regulations are proper. *See Audubon Society of Portland v. LCDC*, 92 Or App 496, 760 P2d 271, *rev den* 307 Or 245, 767 P2d 75 (1988) (so indicating).

■ After considering the statutory scheme as a whole, we conclude that the legislature did not intend a county's authority both to designate EFU land and to allow certain nonfarm uses on that land to be superior to LCDC's authority to protect the state's most valuable resources, including agricultural resources. Under ORS 197.010(1), each county must have a comprehensive plan. The comprehensive plan represents the county's application of the *statewide* land use planning goals. In their comprehensive plans, counties are required to address each of the applicable statewide land use planning goals and to give them equal weight. ORS 197.340(1). LCDC is required to review the plans for compliance with the goals and to provide the counties with acknowledgment that their plans comply with the goals. ORS 197.250; 197.251.

ORS chapter 215 authorizes counties to establish exclusive farm use zones. ORS 215.203. That designation of

exclusive farm use zones must be coordinated with the state's comprehensive land use planning system. Counties may establish EFU zones only when consistent with the county's comprehensive plan. ORS 215.203(1). Because the comprehensive plan must comply with the land use goals, it follows that the designation of EFU zones, and permissible uses within those zones, must comply with those goals as well. On that basis, we conclude that a county's power to designate EFU land and its authority to allow nonfarm uses on EFU land pursuant to ORS 215.213 are subordinate to the state-wide land use planning goals, including Goal 3, as amended, which recognizes the need to protect high value farmland.

Under those circumstances, LCDC's challenged regulations are consistent with ORS 215.213 so long as they are not *less* restrictive than those statutes—that is, if they do not allow *more* uses than the statutes. In reaching the opposite conclusion, *viz.*, that LCDC is precluded from adopting regulations that impose additional regulatory criteria on "uses as of right" set forth in ORS 215.213(1), the Court of Appeals relied in part on this court's holding in *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995). That reliance was misplaced. In *Brentmar*, the court held only that *counties* may not impose additional regulatory criteria. The opinion did not address the issue of *LCDC*'s authority to adopt and implement regulations that impose restrictions on uses otherwise permissible under that statute in furtherance of the state's land use goals.

The view advocated by the county and endorsed by the Court of Appeals would have us hold that marginal lands counties may allow the uses set forth in ORS 215.213, regardless of their impact. But that would be incompatible with the general legislative policy, embodied in both chapter 197 and chapter 215, protecting and maintaining the state's agricultural lands. We hold, therefore, that LCDC did not exceed the scope of its authority in any respect argued by the county when it promulgated regulations imposing additional restrictions on land classified as high value farmland, even if those regulations have the effect of prohibiting uses otherwise permissible under the applicable statute. The county's status as a marginal lands county did not, in other words, place it in a position to authorize uses of high value farmland that other

counties could not authorize. The contrary conclusion of the Court of Appeals was erroneous.

The decision of the Court of Appeals is reversed; the challenged LCDC rules are upheld.