Argued and submitted September 17, reversed and remanded November 19, 1997

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent,*

*v.*

JACKSON COUNTY,
*Respondent,*

*and*

ROGUE VALLEY MANOR, NAUMES, INC.,
and Evelyn Nye,
*Petitioners.*

(No. 96-117)

JACKSON COUNTY CITIZENS' LEAGUE
and Chris N. Skrepetos,
*Respondents,*

*v.*

JACKSON COUNTY,
*Respondent,*

*and*

ROGUE VALLEY MANOR, NAUMES, INC.,
and Evelyn Nye,
*Petitioners.*

(No. 96-123; CA A98494)

948 P2d 731

Gregory S. Hathaway argued the cause for petitioners. With him on the brief were Timothy R. Volpert and Davis Wright Tremaine LLP.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Department of Land Conservation and Development. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

F. Blair Batson filed the brief for respondents Jackson County Citizens' League and Chris N. Skrepetos.

Arminda J. Brown waived appearance for respondent Jackson County.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

### RIGGS, P. J.

Petitioners seek review of LUBA's reversal of Jackson County's decision granting petitioners' application for a conditional use permit to expand an existing golf course. We reverse and remand.

The golf course is presently located, in its entirety, on urban land inside the urban growth boundary (UGB) of the City of Medford. The area of the proposed expansion would include some land that is outside the UGB, some that is zoned for exclusive farm use (EFU), and some that is "high-value farmland" under the Land Conservation and Development Commission's (LCDC) rules codified at OAR 660-33-010 *et seq. See* OAR 660-33-020(8).[1]

Under ORS 215.283(2)(e), counties may allow golf courses as a conditional use on land that is zoned EFU.[2] However, subject to OAR 660-33-130(18), OAR 660-33-120 prohibits the establishment of golf courses on high-value farmland. OAR 660-33-130(18) (sometimes referred to hereafter as section (18)) provides:

> "Existing facilities may be maintained, enhanced or expanded, subject to other requirements of law. An existing golf course may be expanded consistent with the requirements of sections (5) and (20) of this rule, but shall not be expanded to contain more than 36 total holes."[3]

---

[1] All high-value farmland must be zoned EFU, OAR 660-33-090, but not all EFU land is high-value farmland as defined by the LCDC rules. The rules in question contain regulations of uses on EFU land generally, as well as some regulations that pertain only to the high-value land. Although petitioners' proposed expansion would result in only part of the golf course being located on high-value farmland, petitioners' application and the county's approval of it relate to the proposed expansion as a whole. Accordingly, even though other parts of the course would be located on EFU land of lesser quality and on non-EFU land, the relevant statutes and rules as they pertain to or affect high-value farmland are applicable. LCDC's rules do not appear to differ in any way that matters here in their treatment of the permissibility of expanded golf courses on high-value farmland versus EFU land generally. However, the distinction between high-value farmland and other EFU-zoned land may arguably be significant in connection with the question we also address here of whether the rules may validly restrict the use.

[2] ORS 215.213(2)(f) contains a corresponding provision that is not directly applicable here.

[3] After the events in question, LCDC amended OAR 660-33-130(18), apparently in an effort to state more clearly what respondent, the Department of Land

Section (20) defines "[g]olf [c]ourse," for purposes of the rule:

> " 'Golf course' means an area of land with highly main-
> tained natural turf laid out for the game of golf with a series
> of 9 or more holes, each including a tee, a fairway, a putting
> green, and often one or more natural or artificial hazards. A
> 'golf course' for purposes of ORS 215.213(2)(f), 215.283(2)(e)
> and this division means a 9 or 18 hole regulation golf course
> or a combination 9 and 18 hole regulation golf course con-
> sistent with the following [extensive descriptions and
> limitations]."

Section (5), the other provision of the rule cited in section
(18), states:

> "Approval requires review by the governing body or its
> designate under ORS 215.296. Uses may be approved only
> where such uses:
>
> "(a)   Will not force a significant change in accepted
> farm or forest practices on surrounding lands devoted to
> farm or forest use; and
>
> "(b)   Will not significantly increase the cost of accepted
> farm or forest practices on lands devoted to farm or forest
> use."

Section (5) is materially identical to ORS 215.296(1), which
directs counties to make findings corresponding to the
requirements of section (5)(a) and (b) before allowing any of
the uses that are conditionally allowable in EFU zones under
ORS 215.213(2) or ORS 215.283(2).

The county granted petitioners' application, and
respondent DLCD appealed that decision to LUBA.[4] As rele-
vant here, petitioners and DLCD disagreed before LUBA,
and continue their disagreement here, about two questions:
first, whether OAR 660-33-130(18) permits the expansion of
a golf course from urban land to land that is zoned EFU, as
distinct from allowing expansions on EFU land only if the
existing golf course is also located on land zoned EFU; and

---

Conservation and Development (DLCD), now contends that the rule already
meant. It is undisputed that the amendment is not applicable here, and all refer-
ences to the rule in the text are to the version in effect before the amendment.

[4] Jackson County Citizens' League and Chris N. Skrepetos were also appel-
lants before LUBA and are respondents here. In this court, they have simply
adopted the position of DLCD, pursuant to ORAP 5.77(3)(a).

second, if LCDC's rules do not allow petitioners' golf course to be expanded in that manner, whether they are invalid insofar as they restrict the use that ORS 215.283(2)(e) authorizes on EFU land. LUBA agreed with DLCD that the answer to both questions is no;[5] it therefore held that the golf course could not be expanded in accordance with petitioners' proposal, and it reversed the county's decision.

Petitioners now contend to us that LUBA's answers to both questions were erroneous. The *focus* of the parties' disagreement concerning the first question is fairly straightforward: DLCD maintains that OAR 660-33-130(18) allows an *expansion* of a golf course on or onto EFU land generally or high-value farmland specifically to take place only if the *existing* golf course is itself located on land that is zoned EFU;[6] petitioners argue that there is no such limitation and *any* existing golf course can qualify for expansion on or onto EFU land that is contiguous to it.

■       The essence of petitioners' argument is that the language of OAR 660-33-130(18) is plain and unambiguous, and it allows the expansion of golf courses onto EFU-zoned land, without any reference to or limitations on the location or zoning of the existing golf course. Petitioners recognize that, under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) and its progeny, the interpretation of

---

[5] Given its disposition of those questions, LUBA found it unnecessary to reach a number of other assignments that were presented in the appeal to it.

[6] In connection with the first question, both DLCD's argument and LUBA's opinion *sometimes* characterize the perceived limitation of section (18) as being that the expansion can only occur in the *same* zone as the one in which the existing course is located, as distinct from the more general limitation that both the area of the expansion and of the existing golf course must be in *an* EFU zone, albeit not necessarily the same one. We conclude that both the narrower and the broader version of the argument fail for the same reasons. We also conclude that there is no difference between the consequences of the success or failure of one argument, as distinct from the other. Although the EFU land where the proposed expansion is to take place contains high-value farmland, and not *all* EFU zones do, we understand OAR 660-33-120 and OAR 660-33-130 to regulate expansions of golf courses on EFU land in the same way, whether they contain high-value farmland or not. Under OAR 660-33-120, expansions on EFU land other than high-value land are contingent on their successful review under OAR 660-33-130(5) and (20); expansions on high-value farmland are contingent on their successful review under section (18) but, insofar as relevant here, that section in turn makes sections (5) and (20) the decisive criteria. Consistently with DLCD's apparent emphasis, we will address the broader variation of its argument.

the rule requires initial inquiry into its context as well as its text, however clear the meaning of the text may be. However, although petitioners do not phrase their argument in precisely this way, its essential point appears to be that the "context" on which DLCD relies and which, in turn, LUBA found decisive, lends no support to their conclusion and, as used by them, distorts the plain meaning of section (18) instead of illuminating its meaning.

■ At the outset, we agree with petitioners that the language of section (18) is not ambiguous. It allows the expansion of "an existing golf course." Nothing in the language of section (18) suggests that an existing golf course must be located on land that is or is not of a particular quality or that is or is not zoned in a particular way in order to qualify for expansion on contiguous EFU land or high-value farmland.

DLCD does not contend that the language of section (18) *itself* can be read otherwise, but argues that sections (5) and (20), to which section (18) refers, lend support to the interpretation that DLCD propounds.[7] DLCD explains:

> "The reference to golf course expansion 'consistent with the requirements of sections (5) and (20) of this rule...' is significant. OAR 660-33-130(5) provides that approval 'requires review by the governing body or its designate under ORS 215.296.' The rule also requires the use will not force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use and will not significantly increase the cost of accepted farm or forest practices. Quite clearly, because the rule refers to a statute addressing standards applicable to certain uses that may be established in EFU zones, the rule contemplates that the use be in an EFU zone. Similarly, OAR 660-33-130(20) refers to a golf course for the purposes of ORS 215.213(2)(f) and 215.283(2)(e). The statutes address golf courses in EFU zones, not in other zones. Again, the rule contemplates golf courses in EFU zones, not golf courses sited elsewhere."

---

[7] We are not sure whether the arguments based on sections (5) and (20) are more properly classified as "textual" or "contextual," as they bear on the meaning of section (18). In either event, they are part of the "first level of analysis" in the interpretive exercise under *PGE*.

DCLD asserts more generally, based on the regulatory context, that, section (18), like other provisions of OAR 660-33-130 and of OAR Division 660-33, regulate uses on agricultural land; therefore, the term "existing golf course" in section (18) should be understood to mean an existing facility that is located on agriculturally-zoned land.

Petitioners respond, in effect, that DLCD's arguments beg the question. Petitioners point out that the use for which they have applied and that section (18) regulates—the *expansion* of a golf course—*is* a use on EFU-zoned land. Generally speaking, we agree with petitioners. It is true that section (18), like the surrounding regulatory provisions and related statutes, is concerned with uses on agricultural land. However, as petitioners argue, the *expansion* of a golf course on agricultural land, including high-value farmland, is the use that section (18) permits. It is unnecessary to read into section (18) an additional requirement that its language in no way suggests—that the *existing* golf course must *also* be located on EFU land—in order to make the section consonant with the contextual provisions that regulate uses on agricultural land.

In the abstract, there might nevertheless be arguable plausibility to DLCD's understanding that, given the context, *both* the existing facility and the expansion are regulated by section (18) as uses located on farmland. However, the abstract plausibility of DLCD's understanding disappears upon analysis of the concrete particulars of its argument. *All* of the statutes and regulatory provisions on which DLCD relies as either text or context—*inter alia,* ORS 215.213(2), ORS 215.283(2), ORS 215.296(1) and various parts of OAR 660-33-120 and OAR 660-33-130—regulate uses on EFU land and on high-value farmland by specifying types of uses that may, or may not, be *prospectively* permitted or approved and by defining criteria for their prospective allowance and approval. Rarely, if at all, do the pertinent statutes or rule provisions purport to regulate *existing* uses.

Consequently, the context tends to support the opposite of the proposition for which DLCD advances it. The concern of the pertinent statutory and rule provisions is with the permissibility of and conditions for allowing new uses, not

with the regulation of existing ones. Hence, those provisions do not support DLCD's view that section (18) implicitly means what it does not say, *i.e.*, that the location or zoning of an existing golf course is significant either as an independent regulatory target or as a condition of permitting the new expansion of the use on agricultural land. To the extent that the contextual statutes and regulations are instructive as to the meaning of section (18), they point to the same conclusion as its own language does, that the whereabouts and zoning of the existing use are *not* criteria for or limitations on whether it may be expanded onto contiguous EFU land.

The remaining arguments that DLCD bases on the context of section (18) focus on policy considerations. DLCD notes that, under OAR 660-33-010, the "purpose of [OAR Division 660-33] is to implement the requirements for agricultural land as defined by Goal 3." Goal 3, in turn, has as its overriding policy that "[a]gricultural lands shall be preserved and maintained for farm use." In DLCD's view, its interpretation of section (18) must be adopted to further that policy which is incorporated into the general body of rules of which it is a part.

Statutes and rules often contain statements of general policy, like the statement that DLCD cites in this rule. Such expressions *can* serve as contextual guides to the meaning of particular provisions of the statutes or rules, as much as any other parts of the enactment can. At the same time, the use of expressions of policy as context is subject to the same limitations as any other proffered type of context: they are instructive only insofar as they have a genuine bearing on the meaning of the provision that is being construed. Moreover, when legislative or administrative expressions of policy are offered as context, courts must be cautious not to *make* policy in the guise of interpretation, or to allow agencies or other parties to achieve through a court's interpretation policy objectives that the enactment as promulgated was not meant to or failed to embody. *See 1000 Friends of Oregon v. Wasco County Court*, 299 Or 344, 703 P2d 207 (1985). It goes without saying that broad policy considerations are not necessarily integrated into *every* enactment that relates generally to the subject matter that the policy underlies, or to *every* regulation that is promulgated by an agency whose responsibilities include the implementation of the policy.

Here, DLCD's contention that the general policy of the goal and the rule provides context for the specific provision in question is weakened by the fact that OAR 660-33-130(18) creates an exception to the limitations that OAR 660-33-120 places on golf courses on farmland (or at least on high-value farmland). Stated differently, section (18) does not implement the farm use preservation policy of the goal and of other provisions of the rule; instead, it defines a specific situation where a specific nonfarm use that the rule generally restricts or prohibits may be allowed.

DLCD nevertheless appears to argue, and LUBA also appears to have reasoned, that section (18) should be construed to the extent possible as favoring the preservation of farmland for agricultural use, in keeping with the general policy of Goal 3. To that end, DLCD argues, it is more consistent with the preservation of farmland to allow expansions of golf courses on or onto agricultural land from existing golf courses that are located on agricultural land than from contiguous golf courses that are located on land of other kinds. However, it is not readily apparent why that should be so. In either instance, the expansion would allow part of a golf course to be sited on farmland where no golf course is currently located or on high-value farmland where no golf course would otherwise be permissible.

DLCD asserts further that, if the existing golf course is in an EFU zone, it has already necessarily qualified for placement on farmland under state and local criteria applicable to nonfarm uses on farmland, principally ORS 215.296 and/or its regulatory duplicate, OAR 660-33-130(5); hence, according to DLCD, the expansion of a golf course from an EFU location to another EFU or high-value farmland location would not be as intrusive on the agricultural use of farmland as would the expansion of a golf course that is currently located on nonagricultural land. Again, however, we do not find much difference in DLCD's distinction. We reiterate that the question under section (18), and the question here, is the permissibility of the *expansion*, not the permissibility of the *existing* facility. Because section (18) makes the *expansion itself* subject to review under ORS 215.296 and section (5), we find the argument less than compelling that the preservation of agricultural land for farm use would somehow be better served if the new nonfarm use on farmland were to emanate

from an *existing* nonfarm use that had been reviewed under ORS 215.296 instead of one that had not.

■ DLCD's arguments that are based on policy considerations do not persuade us that there is any contextual link between those considerations and section (18) that has a tendency to support the interpretation of the section that DLCD urges us to adopt. Indeed, those arguments come to little more than postulations by DLCD that the existence of the preservation policy of Goal 3 means, *ipso facto*, that section (18) must be construed in the way that DLCD regards as more consonant with that policy than other interpretations might be. However, as we understand the meaning of "context" in *PGE* and related cases, it contemplates a substantive relationship between the provision being interpreted and the putatively contextual provision in which the latter reflects in some meaningful way on the intended meaning of the former; a provision does not constitute "context" for another in that sense simply because the two are connected in some amorphous way that amounts to little more than their common authorship and general subject. A relationship of the requisite kind between section (18) and the expressions of policy on which DLCD relies is simply not present here.[8]

■ DLCD makes one further argument to support its position that section (18) should be interpreted to allow expansions of golf courses only from existing facilities that are located on EFU-zoned land. Relying on two letters in which a DLCD staff member expressed that view to county

---

[8] Although the reasons why this situation exists in the form it does are neither known to us nor particularly relevant to our analysis, it is a reasonable hypothesis that the relevant version of OAR 660-33-130(18) was adopted without any anticipation of circumstances like these. It is quite understandable that the circumstances would not have been foreseen. It is probably quite rare that an existing golf course that *could* be expanded on or onto farmland would be one that is not already located on farmland. The facts here are probably unusual or unique, in that a cognizable amount of farmland, sufficient to accommodate the expansion, is contiguous to both the UGB and a golf course that is on the other side of the UGB. Moreover, as described in LUBA's opinion, the "existing golf course and proposed expansion [here] are joined only by a short common boundary." LUBA explained further that the "property can be visualized as a 'figure 8,' with the existing golf course in one loop and the proposed addition in the other loop." However unpredictable the situation may have been, it is nevertheless the case that the relevant version of the rule does not cover these facts in the way that DLCD and, perhaps, LCDC might wish that it had.

personnel in connection with petitioners' application, DLCD argues that we should accord deference to that view as representing DLCD's interpretation of the rule. In *Dept. of Land Conservation v. Lincoln County*, 144 Or App 9, 14 n 4, 925 P2d 135 (1996), *rev den* 324 P2d 560 (1997), we rejected the view that interpretations by DLCD of rules promulgated by LCDC are subject to a deferential review standard. In its later opinion in *Dunning v. Corrections Facility Siting Authority*, 325 Or 269, 935 P2d 1209 (1997), the Supreme Court stated as a general proposition that "[w]e apply [the] deferential standard only when the body interpreting the rule is also the body that promulgated it." *Id.* at 277 n 4.[9] Accordingly, we conclude that no deferential review standard applies here.

In summary, we conclude that the language of section (18) itself is unambiguous, and cannot plausibly be read as limiting the expansions of golf courses that it authorizes on EFU land to those circumstances where the existing golf course is also located on land that is zoned EFU. Rather, the plain import of the text of the section is that, subject to OAR 660-33-130(5) and (20), any existing golf course, regardless of the zoning or quality of land on which it is located, qualifies for expansion onto EFU and high-value farmland to which it is contiguous. If any relevance can be found in any of the context that the parties discuss or we find, it inheres in the fact that OAR 660-33-120 and OAR 660-33-130 and the statutes cited in those rules are concerned generally with the prospective permissibility and allowance of uses on EFU or high-value farmland, not with the regulation of existing uses. To the extent that context is significant, it supports rather than detracts from the interpretation of section (18) that the unambiguous language of the section appears to compel.

---

[9] We question, but need not decide, whether communications by a staff member under circumstances of this kind could constitute an "agency interpretation" for any purposes that bear on our scope of review.

We note, as we did in *Gage v. City of Portland*, 133 Or App 346, 350, 891 P2d 1331 (1995), that the term "deference" as used there and here describes a standard of judicial review. By holding that the deferential standard is inapplicable, we by no means suggest that the view of the person or entity to which the standard does not apply does not merit our respectful attention. However, it does not relieve us of the responsibility to decide what the provision means, after giving due attention to all of the alternatives that are presented.

There are no contextual provisions that can plausibly be understood as bearing on the meaning of section (18) that lend support to a contrary interpretation. We interpret the rule accordingly, and we hold that LUBA erred in its conclusion that expansions onto EFU or high-value farmland are permissible under section (18) only if the existing golf course is also located on agriculturally-zoned land.

As we have noted, *see* n 5, LUBA's contrary conclusion made it unnecessary for it to reach a number of assignments of error that were presented to it. Consequently, a remand to LUBA is necessary.

■■ Because LUBA's ruling on the other issue that it *did* decide has been assigned as error and fully argued to us, and because it *may* remain relevant on remand, we will address it. Petitioners assert that LUBA erred in rejecting their argument that OAR 660-33-120 and OAR 660-33-130 are inconsistent with ORS 215.283(2)(e) and, therefore, are invalid insofar as the rules limit the permissibility of golf courses on high-value farmland when the statute makes golf courses a permissible use in EFU zones. LUBA was correct in rejecting that argument. *Lane County v. LCDC*, 325 Or 569, 942 P2d 278 (1997); *see also Marquam Farms Corp. v. Multnomah County*, 147 Or App 368, 936 P2d 990 (1997).[10]

Reversed and remanded.

---

[10] The issue addressed in this paragraph may be academic here, in the light of our holding that, by their terms, the rules do not preclude the proposed expansion of petitioners' golf course in the way that LUBA held they did. However, we do not know whether the issue may have *some* bearing on the assignments that LUBA has not yet addressed. We imply no answer to that question.

Generally, we address issues that are not essential to *our* decision only if they are *likely* to arise on remand. However, that is not an immutable rule. The Supreme Court decided *Lane County* after petitioners prepared their brief in this court. It leaves no doubt as to the resolution of this issue. No purpose would be served by leaving the issue in an undecided posture in this case, if there is *a possibility* that it might assume relevance in any further proceedings that follow from our disposition. *See* ORS 197.805.