Argued and submitted October 20, affirmed November 26, 1997

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Petitioner,*

*v.*

YAMHILL COUNTY,
*Respondent,*

*and*

Joan MILLAY,
*Intervenor-Respondent.*

(LUBA No. 96-191; CA A98723)

949 P2d 1245

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for petitioner. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

John C. Pinkstaff argued the cause and filed the brief for respondent.

Michael C. Robinson argued the cause for intervenor-respondent. With him on the brief was Stoel Rives LLP.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Leeson, Judge.

DEITS, C. J.

---

## DEITS, C. J.

The Department of Land Conservation and Development (DLCD) seeks review of LUBA's decision affirming Yamhill County's approval of a so-called "lot of record dwelling" in an exclusive farm use (EFU) zone. We affirm.

Donald and Sarah Duncan acquired the property in question in 1973. In 1996, their son Robert Duncan (Duncan) bought the property from them and applied to the county for permission to site a dwelling on it pursuant to ORS 215.705 and corresponding local legislation. ORS 215.705 provides, as relevant:

"(1)  A governing body of a county or its designate may allow the establishment of a single-family dwelling on a lot or parcel located within a farm or forest zone as set forth in this section and ORS 215.710, 215.720, 215.740 and 215.750 after notifying the county assessor that the governing body intends to allow the dwelling. A dwelling under this section may be allowed if:

"(a)  The lot or parcel on which the dwelling will be sited was lawfully created and was acquired by the present owner:

"(A)  Prior to January 1, 1985; or

"(B)  By devise or by intestate succession from a person who acquired the lot or parcel prior to January 1, 1985.

"(b)  The tract on which the dwelling will be sited does not include a dwelling.

"* * * * *

"(d)  The lot or parcel on which the dwelling will be sited, if zoned for farm use, is not on that high-value farmland described in ORS 215.710 except as provided in [subsections of the statute that are not material here].

"* * * * *

"(g)  When the lot or parcel on which the dwelling will be sited is part of a tract,[1] the remaining portions of the

---

[1] ORS 215.010(2) defines "tract" as "one or more contiguous lots or parcels under the same ownership."

tract are consolidated into a single lot or parcel when the dwelling is allowed.

"* * * * *

"(6) For purposes of subsection (1)(a) of this section, 'owner' includes the wife, husband, son, daughter, mother, father, brother, brother-in-law, sister, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, aunt, uncle, niece, nephew, stepparent, stepchild, grandparent or grandchild of the owner or a business entity owned by any one or combination of these family members."

ORS 215.700 states the legislative purpose that underlies ORS 215.705 and the other statutes cited in it:

"The Legislative Assembly declares that land use regulations limit residential development on some less productive resource land acquired before the owners could reasonably be expected to know of the regulations. In order to assist these owners while protecting the state's more productive resource land from the detrimental effects of uses not related to agriculture and forestry, it is necessary to:

"(1) Provide certain owners of less productive land an opportunity to build a dwelling on their land; and

"(2) Limit the future division of and the siting of dwellings upon the state's more productive resource land."

There is no issue here, or at least none that is presented to us, about whether Duncan's property qualifies for a new dwelling under the foregoing provisions. For example, no contention is made here that there is an existing dwelling on the tract. The only question is whether Duncan qualifies as a person who may site a dwelling on the property under ORS 215.705(1)(a). The gist of the county's argument and, for somewhat different reasons, respondent Millay's,[2] is that Duncan is the son of persons who acquired the property before 1985; as such, he is defined by ORS 215.705(6) as an "owner" of the property "[f]or purposes of [ORS 215.705-(1)(a)]"; and he therefore stands in the same position as his parents did as a person who was an owner prior to January 1,

---

[2] In the balance of this opinion, we will refer to the county and Millay collectively as "respondents," when discussing them *as parties*. Although they have appeared separately and their arguments are not identical, the differences are not significant to our disposition, and we will treat them interchangeably.

1985, and who may site a dwelling on the property under subsection (1)(a).

DLCD disagrees with that understanding of the text of the relevant provisions. As it interprets them, a son or other relative who is included in the subsection (6) definition of "owner" and who purchased the property from the titleholder after January 1, 1985 is not an "owner" who may be permitted to site a dwelling on it pursuant to subsection (1)(a)(A). DLCD distinguishes relatives who acquire the property by *inter vivos* transfer from those who inherit it and are expressly allowed to site dwellings on it by subsection (1)(a)(B). The central premise of DLCD's arguments—at least those based on the statutory text—is that the term "*present* owner" in subsection (1)(a) contemplates an "owner" in the usual sense, *i.e.*, the legal or equitable titleholder, and does not include the body of related persons who come within the definition of "owner" in subsection (6). DLCD explains in its brief:

> " 'Present owner' has a clear and unambiguous meaning: the person who currently owns the lot. If that person purchased the lot before January 1, 1985, the present owner qualifies for a lot of record dwelling. ORS 215.705-(1)(a)(A). ORS 215.705(1)(a)(B) expands the class of 'present owners' to include the relatives of a deceased owner. This is plain language which must be given its plain meaning. ORS 174.010."

DLCD then refers to the analysis in LUBA's opinion and continues:

> "LUBA * * * strayed from this plain interpretation by inserting the language of Section (6) where it did not belong, concluding that the persons listed in ORS 215.705(6) qualify for a lot of record dwelling even if they are not listed in either ORS 215.705(1)(a)(A) or 215.705-(1)(a)(B). LUBA simply inserted the definition in ORS 215.705(6) into section (1). While this might seem logical, the difficulty with this method is it ignores that the reference in (1) is to 'present owner,' not 'owner.' It also renders the requirements of (1)(a)(A) and (B) surplusage, and expands the lot of record dwelling opportunity far beyond its express terms or intended scope.

> "The textually logical construction of section (6) is that it defines the class of persons who may acquire the dwelling approval for lots of record 'by devise or intestate succession,' ORS 215.705(1)(a)(B), and thereby become the 'present owner' for purposes of a lot of record dwelling. Thus, the husband of a deceased pre-1985 owner may, in effect, become the present owner.' "

In addition to their textual arguments, DLCD and respondents also offer arguments based on context and on legislative history to support their interpretations. Both sides appear to view the text and context as being decisively favorable to them but also assert that, if there is any need to consult the legislative history, it too favors their respective positions. In its opinion, LUBA concluded that the text and context were inconclusive, principally on the theory that the use of the different terms "present owner" in ORS 215.705(1)(a) and "owner" in subsection (6) created an ambiguity. However, LUBA found the legislative history to be decisive and to support respondents' interpretation of the provisions.[3]

■ In our view, the text, context and legislative history uniformly support LUBA's conclusion. We are unpersuaded by DLCD's argument, at the textual level, that the word "present" in subsection (1)(a) modifies or qualifies the word "owner" in such a way that the latter term does not have the same meaning that it is defined to have in subsection (6). DLCD's argument is plausible only in a *linguistic* sense. However, as a linguistic matter, it is at least equally plausible to read "present" as a purely chronological term relating to *when* the owners must have and have had the necessary association with the property, as distinct from *who* the owners are. As we indicated in *Fechtig v. City of Albany (A97764)*, 150 Or App 10, 19-20, 946 P2d 280 (1997), and in *Steele v. Employment Department*, 143 Or App 105, 113, 923 P2d 1252, *rev allowed* 324 Or 487 (1996), the linguistic tenability of a proffered interpretation of a statutory term does not

---

[3] LUBA also concluded that this court's decision in *Craven v. Jackson County*, 135 Or App 250, 898 P2d 809, *rev den* 321 Or 512 (1995), in which we previously construed ORS 215.705 and on which respondents relied to varying extents as controlling, dealt with a different issue and was not dispositive. We agree that *Craven* does not answer all of the questions that are presented here.

make the interpretation "plausible" if a different interpretation that is also linguistically supportable is decisively more consistent with the sense and purpose of the statute and its surrounding language. Here, DLCD's interpretation of the term "present owner" is not plausible under that test.

ORS 215.705(6) defines "owner" solely "for purposes of" ORS 215.705(1)(a). The word "owner" appears only one time in subsection (1)(a)—the time, of course, that it is preceded by the word "present." If "present owner" as used there referred to the titleholder only, and did not include the other persons defined as owners in ORS 215.705(6), subsection (6) would be a complete nullity; under DLCD's interpretation, subsection (6) would be a provision whose only purpose is to define a statutory term that, the one time it is used in the statute, means something that differs diametrically from what subsection (6) defines it to mean.[4]

We conclude that the texts of ORS 215.705(1)(a) and (6) strongly support the interpretation that the term "owner" in subsection (1)(a) means what subsection (6) defines it to mean. Indeed, it is difficult to imagine a clearer way in which the legislature could have communicated that intent than the language of the relevant provisions does. Subsection (6)

---

[4] DLCD states in its brief that, if subsections (1)(a) and (6) are construed in the way respondents and LUBA interpret them, subsection (1)(a)(B) would be "surplusage." DLCD does not amplify on that statement in its brief, but we explored the question at oral argument. DLCD's basic point appears to be that there would be no purpose to ORS 215.705(1)(a)(B) if the definition in subsection (6) were applicable, because the persons who might come within subsection (1)(a)(B) upon inheriting a deceased owner's property would be "owners" before the inheritance by virtue of subsection (6). We do not agree with the critical premise of that point, *i.e.*, that the potential heirs under ORS 215.705(1)(a)(B) are necessarily and completely subsumed within the enumeration of relationships in ORS 215.705(6). Subsection (1)(a)(B) includes devisees as well as intestate successors; persons who may take by will are of course not limited to those who stand in a relationship to the decedent of a kind cited in subsection (6) (or to those who are related to the decedent at all). Moreover, the relationships enumerated in subsection (6) are not identical in all respects to those that are eligible for intestate succession. For example, sisters-in-law and brothers-in-law are among the "owners" defined by subsection (6), but they are not heirs at law under ORS 112.045; correspondingly, first cousins may take by intestate succession under ORS 112.045(4), but they are not "owners" under ORS 215.705(6).

We note that we are not called upon to interpret ORS 215.705(1)(a)(B) here, except as it bears on the meaning of ORS 215.705(1)(a)(A), the provision that is directly at issue. We imply no answers to any questions that might arise under subsection (1)(a)(B) that go beyond that.

expressly defines the word for purposes of subsection (1)(a), and subsection (1)(a) uses the word only once. Under the statutory text Duncan is an owner within the meaning of both provisions, and he is qualified to site a dwelling on the property pursuant to ORS 215.705(1)(a)(A).

The context is comparably clear, and its import is the same. ORS 215.700 *et seq* have, as one of their purposes, the alleviation of other statutory and regulatory restrictions on the siting of dwellings in resource zones on land that is of nonpremium resource quality. That purpose is stated expressly in ORS 215.700. The statutes also make clear that that policy is to be implemented, at least in part, through "grandfather" provisions that extend to the families of long-standing legal or equitable titleholders as well as the titleholders themselves. *See Craven*, 135 Or App at 254-55.

DLCD makes a number of arguments aimed at escaping that conclusion. First, it selects language in ORS 215.700, *e.g.*, that the statute uses the general term "certain owners" to describe—and, inferentially, limit—those who are to benefit by its policy. We do not agree with the suggestion that that word choice reflects any intent to exclude persons, like pre-1985 owners and their children, whom the statutes expressly include in the benefitted category.

DLCD also seeks contextual support in the general policy of Goal 3 and of the agricultural lands statutes, which mandate the preservation of agricultural land for farm use. We reject that contextual argument for reasons analogous to those that led us to reject an analogous argument that DLCD made in *DLCD v. Jackson County*, 151 Or App 210, 948 P2d 731 (1997), in connection with its proffered interpretation of another provision. ORS 215.705(1)(a) and (6) are not aimed at advancing the general preservation policy of the goal and the other statutes; their clear objective is to create an exception to the operation of other statutes that do implement the policy. Stated more specifically, ORS 215.705(1)(a) and (6) are not meant to protect farmland from the siting of the dwellings they authorize. Those provisions create an exception to other statutes and regulations that restrict dwellings,

and relief from those other statutory and regulatory restrictions is part of the declared purpose of the statutes of which the provisions in question are a part. *See* ORS 215.700.

Relatedly, DLCD contends that, construed in the way that respondents urge and LUBA did, ORS 215.705(1) would allow an extensive proliferation of dwellings on farmland. DLCD posits that, under the statute as so interpreted, a variety of relatives would be able to erect otherwise impermissible dwellings on various portions of lots and parcels that have been separately conveyed to them by the actual pre-1985 owners.[5] However, ORS 215.705(1)(b) proscribes the siting of a dwelling on a tract that already contains one; and, at least in some circumstances, ORS 215.705(1)(g) requires property holdings to be consolidated in a manner that would limit subsequent divisions and/or dwellings once a dwelling has been sited on the property pursuant to the statute. It is accordingly clear that the legislature thought of and addressed the general concern that DLCD expresses. As we suggested in *Craven*, in a different connection under the same statutes, DLCD's recourse is to the legislature if it does not believe that the provisions that were enacted to deal with the concern do so adequately. *Id.* at 255.

We conclude that the context, like the text, points to the conclusion that Duncan, as the son of the pre-1985 titleholders, is an "owner" within the meaning of ORS 215.705-(1)(a), and may be allowed to site a dwelling on the property pursuant to the statute. If resort to the legislative history were necessary or permissible, we would agree with the following passage from LUBA's opinion concerning the history of Oregon Laws 1993, chapter 792, through which the provisions in question were enacted:

"Regarding the question of who would be considered an 'owner,' Senator Bunn explained:

" 'I think the general sense was that the ownership should be continuous ownership within a family. And I don't know how we define family. But I think there was a feeling it should not be one particular individual or

---

[5] We accept DLCD's premises concerning the potential for proliferation only for the sake of discussion. We expressly do not decide whether ORS 215.705 would permit dwellings in the expansive way that DLCD apprehends.

you shouldn't have to inherit—the original version, I believe, you had to inherit, you couldn't even buy from your parents and that seemed rather rigid in that expanding it to the family a little broader would be appropriate.' [Minutes, Senate Committee on Agriculture and Natural Resources, Work Session on HB 3661, July 20, 1993] at 8.

"The committee discussion reflects that the intent of ORS 215.705(6) was to allow inter vivos transfers between family members without the loss of the right to build a dwelling. Senator Bunn's comments in the committee's work session also illustrate the balance sought by the legislature:

" '[W]e have to find limits and the goal of the lot of record is not to provide more land for development. It is to take people that bought a parcel with the legitimate belief that they could build on that. We have changed the rules since and we're going back and saying, out of fairness, we'll give you that opportunity. We've got to draw the line somewhere. And either the individual that owned it is one way, and the simplest way. Or saying, if it's within a family, that's acceptable too.' *Id.*

"Following passage by the Senate, when HB 3661 was considered and passed by the House of Representatives, the following exchange occurred during the August 3, 1993 floor discussion:

"Representative Dell inquiring of the carrier of the bill: 'What is the intent of section 2(6) concerning the meaning of "owner?" '

"Representative Baum, responding: 'This section applies only to the requirement that, in order to qualify as a lot of record under House Bill 3661, the lot or parcel must have been created and acquired by the present owner. The intent is to allow property owners who did acquire their property prior to 1985 to subsequently transfer the lot to a family member or business entity that they or other family members may own without losing the allowance for a dwelling. In other words, under subsection (6), a child who was given property in 1989 that has been owned since 1984 by a parent would be viewed as the same owner who had held the property since 1984 and would therefore get a lot of record dwelling.' "

LUBA concluded:

"We find that these comments exemplify the legislative discussions regarding ORS 215.705(1)(a) and (6), and indicate the legislative intent behind those two provisions was to allow the inter vivos transfer of property between certain specified family members without disqualifying the new owner from siting a lot of record dwelling under the statute."

We also conclude that the legislative history of the statute is plainly contrary to DLCD's position.

Affirmed.