On appellant's petition for reconsideration filed November 18, on respondent's petition for reconsideration and response to appellant's petition for reconsideration filed November 25 and appellant's response to respondent's petition filed December 15, 1987, reconsideration denied on appellant's petition, reconsideration granted on respondent's petition, former opinion (88 Or App 15, 744 P2d 257 (1987)) modified and adhered to as modified February 10, both petitions for review denied May 3, 1988 (305 Or 594)

# PACIFICORP,
## dba Pacific Power & Light Company,
*Appellant,*

*v.*

# CITY OF ASHLAND,
*Respondent.*

(86-0553-J-1; CA A41718)

749 P2d 1189

Joyce Ann Harpole, Portland, for petition and on response for appellant.

Donald R. Stark, Barry L. Adamson and Williams, Fredrickson, Stark & Weisensee, P.C., Portland, for petition and on response for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Deits, J., concurring.

## RICHARDSON, P. J.

Both parties petition for review and ask that we reconsider our previous decision. 88 Or App 15, 744 P2d 257 (1987). ORAP 10.10. We deny plaintiff's petition, grant defendant city's petition and modify and adhere to our former opinion.

City's petition challenges our remand of the summary judgment for it on plaintiff's first claim. We based that holding on our conclusion that, contrary to city's argument, the authority to regulate public utilities and to provide utility services, which various provisions in ORS chapters 221, 223 and 225 confer on cities, does not render the territorial allocation statutes, ORS 758.400 to 758.475, inapplicable to cities in their capacity as providers of utility services and does not permit them to furnish utility services in areas which have been allocated to other providers. The areas affected by that holding were allocated to plaintiff when they were in unincorporated portions of Jackson County and were later annexed by city.

The regulatory statute on which city relies principally in its petition is ORS 221.420(2)(a), which permits cities to

"[d]etermine by contract or prescribe by ordinance or otherwise, the terms and conditions, including payment of charges and fees, upon which any public utility, electric cooperative or people's utility district may be permitted to occupy the streets, highways or other public property within such city and *exclude or eject any public utility therefrom.*" (Emphasis supplied.)

The focus of city's concern with our former opinion is our statement that

"the city is not correct in its view that its *unexercised authority* under [ORS 221.420(2)(a) and other] statutes [setting out city regulatory powers] is relevant to the question presented in plaintiff's first claim. The mere existence of those powers does not permit the city, acting in its capacity as a provider of utility services, to act in violation of the allocation statutes to which it is expressly subject in that capacity. The city has not exercised its authority to regulate plaintiff or to exclude plaintiff from its territory * * *." 88 Or App at 21. (Emphasis in original.)

City argues that that statement is erroneous in two basic respects. It contends, first:

> "Until the appearance of that passage in the Court of Appeals' opinion, the determinative point litigated by the parties in the trial court was not whether any authority in ORS chapters 221, 223, or 225 had been exercised—a point perhaps prudently ignored by [plaintiff]—but simply whether the authority existed.

> "To conclude, as did the Court of Appeals, that the City loses because it has failed to 'exercise' certain authority necessarily presumes the existence of that authority. But once the Court of Appeals recognized that the City *possesses* authority, for example, to 'exclude or eject' [plaintiff] from the city limits (ORS 221.420(2)(a)), the inquiry draws to a close, because it is the *existence*—not the *exercise*—of that power that was the dispositive issue litigated in the trial court.

> "* * * * *

> "What has now happened is that the Court of Appeals' opinion inexplicably construes the dispute to involve the *factual* question of whether the City has ever actually exercised any enabling authority (such as the statutory power to 'exclude or eject'), rather than the question litigated below as to whether [plaintiff] is correct that, *as a matter of law,* the City lacks authority apart from the allocation statutes to provide electric service to its own residents in annexed-but-allocated territory. And what is worse, the Court of Appeals then resolves the non-litigated fact issue against the City." (Emphasis city's.)

City's second point is that, if the exercise, rather than the mere existence, of its regulatory authority and authority to furnish services is relevant, the authority has been exercised. City contends that it has provided and does provide and that plaintiff has never provided electric utility services in the allocated areas which are the subject of plaintiff's first claim. The presence of city services and the absence of services by plaintiff in those areas, according to city, has endured through a period of more than 20 years. City argues that it has therefore exercised its authority under ORS 221.420(2)(a) to exclude or eject plaintiff from the areas.

We concluded in our former opinion, and adhere to the conclusion, that the mere existence of the authority of the city under ORS chapters 221, 223 and 225 does not give it the

lawful right to act as a provider in territory allocated to another provider. We went on to *suggest* that, if a city *had* excluded or ejected a provider from the latter's allocated territory, that city might be able to serve the territory. We stated, however, that the city had not exercised any authority to exclude or eject plaintiff.

City argues that the existence of the authority under the enumerated chapters was the only issue which the parties litigated and that we erred by going beyond that to the question of whether the authority had been exercised. Plaintiff does not agree that the issue of whether the authority had been exercised was not presented to the trial court. Be that as it may, city's argument is self-defeating. If we should not have *considered* the exercise question, it could be no more relevant to our decision if city had exercised its authority, as it now argues that it did, than if it had not; and if, as city argues, we may only consider the effect which the existence of that authority has on city's ability to provide utility services in the territory allocated to plaintiff, we answered that question adversely to city in our first opinion and have reiterated that answer here. In essence, city's contention is that we should have confined our inquiry to an issue that we decided against it and that we should not have addressed an issue which —given our conclusion on the first—had to be decided in its favor for it to prevail on plaintiff's first claim.

■    However, we do not agree that we are precluded from considering the *legal* effect of the exercise of city regulatory powers as well as their existence. Our disposition of plaintiff's first claim turns on the meaning of statutes and the interrelationship of two statutory schemes. Although it is correct that courts should not make the parties' arguments for them, it is equally correct that the parties cannot compel a court to misconstrue a statute by arguing only incorrect interpretations of it. The balance between those principles is not always easy to strike. The appropriate answer might sometimes be that a party which would benefit from a statute if it were correctly construed, but which does not urge that construction, is not entitled to prevail. City would be in that position if that were the answer here. It is entitled to and does rely solely on the existence of the regulatory statutes. We have rejected its arguments based on the existence of the regulatory authority. However, we agree with plaintiff that *it* made arguments,

both to the trial court and us, that city did not exercise its regulatory authority and that the exercise of that authority as well as its existence is a relevant legal consideration. For an example, the passage from plaintiff's reply brief which we quoted in our former opinion. 88 Or App at 20. We conclude that the question is properly before us.

Whether an exercise of authority under ORS 221.420(2)(a) could validate city's incursion into the allocated territory, in ways which the existence of that authority could not, is a legal question. That legal question may give rise to the factual one of whether city *did* exercise the authority. We agree with city that we assumed the answer to the factual question—on the basis of plaintiff's representation and city's silence—and that it was an error to do so. Therefore, if the question is a material one, a remand to the trial court would be necessary to resolve it.[1] For the factual question to be material, the threshold inquiry is whether, as a matter of law, the answer to it can affect the result. The question would be material, first, if city's exercise of its authority under ORS 221.420(2)(a) would permit it to serve the territory in question and, second, if what city did could, as a matter of law, constitute an exercise of the authority.

We said in our former opinion:

"[W]e need not decide whether plaintiff is correct in implying that, if a city chooses to provide utility services *and* to 'eject or exclude' a public utility from its allocated territory within the city, the allocation statutes would prevent the city from providing services in the territory from which it has ejected the exclusive provider." 88 Or App at 21. (Emphasis in original.)

We now do need to decide that question, and we hold that the answer is no.

ORS 758.470(1) provides:

"ORS 758.015 and 758.400 to 758.475 shall not be construed or applied to restrict the powers granted to cities to

---

[1] Plaintiff maintains that a remand would not be appropriate, because city had and did not carry the burden of producing evidence in the summary judgment proceeding that it had ejected or excluded plaintiff from the allocated territory. We do not agree that there was no evidence that city has installed service facilities and is providing service in that territory. The legal effect of the fact which that evidence tends to prove will be discussed later in the text.

issue franchises, or to restrict the exercise of the power of condemnation by a municipality; and when a municipality has condemned or otherwise acquired another person's equipment, plant or facilities for rendering utility service, it shall acquire all of the rights of the person whose property is condemned to serve the territory served by the acquired properties."

That statute does not *expressly* reserve city authority to exclude or eject under ORS 221.420(2)(a); however, it does not purport to provide a detailed enumeration of cities' statutory powers which are or are not reserved, as distinct from referring in general terms to species of reserved authority. It would make no sense for the allocation statutes to be inapplicable to a city's franchising authority in allocated territories, but to prevent cities from excluding utilities from those territories. Moreover, as we implied in our former opinion, it would be utter nonsense for a city's exercise of the power to exclude or eject an exclusive provider from a territory to have the result that no utility service could be provided in that territory. The legislature could not and did not so intend.

■        The remaining question is whether, as a matter of law, anything that city has shown or argues that it has done can be regarded as an exercise of its authority to exclude or eject under ORS 221.420(2)(a). City argues in its petition that its acts of placing distribution facilities and providing services in the allocated territory, without more, constitute an exercise of that authority. We do not agree with that argument. The statute contemplates some level of formal action as the mode for the exercise of city authority, *i.e.,* "[d]etermine by contract or prescribe by ordinance or otherwise." Equally fundamentally, city's contention that it has excluded or ejected plaintiff simply by moving facilities into and serving its territory posits that the allocation statutes can be rendered inapplicable by the act of violating them. We cannot accept that contention. The facts asserted by city that its incursion into the allocated areas has taken place over an extended period and that plaintiff never objected to city's actions before it initiated this proceeding do not alter the legal conclusions that the mere act of providing facilities and services in another provider's allocated territory is a violation of the allocation statutes and is not an exercise of the authority to exclude or eject under ORS 221.420(2)(a). City identifies no material question of fact.

City's petition contains the cry of outrage, among others, that the effect of our original opinion would be to eliminate the electricity service that it has provided in the allocated territory for over 20 years and to leave that territory to an exclusive provider which offers no service. City seems to regard this proceeding as the exclusive vehicle for solving the problems to which it points and for avoiding new ones. It may be, however, that there are other avenues to salvation, such as proceedings before the Public Utility Commission or city's taking any necessary regulatory action now which it has not taken before.

Reconsideration denied on appellant's petition; reconsideration granted on respondent's petition, former opinion modified and adhered to as modified.

**DEITS, J.,** concurring.

I agree with the majority's disposition of the petitions for reconsideration. I emphasize, however, that I adhere to my dissent from our original opinion on the issue of city's authority to condemn plaintiff's property for the purpose of providing the utility services for which plaintiff was using the property. That issue is raised by plaintiff's petition, which our denial of reconsideration now places before the Supreme Court.