Argued and submitted January 31, affirmed March 8, 1995

Dorothy GAGE
and Ashcreek Neighborhood Association,
*Petitioners,*

*v.*

CITY OF PORTLAND
and FP-35 Partners,
*Respondents.*

(93-030; CA A86719)

891 P2d 1331

Edward J. Sullivan argued the cause for petitioners. With him on the brief was Preston Gates & Ellis.

Jeff H. Bachrach argued the cause for respondent FP-35 Partners. With him on the brief were O'Donnell Ramis Crew Corrigan & Bachrach and Peter A. Kasting and Office of the City Attorney.

Peter A. Kasting waived oral argument for respondent City of Portland.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Petitioners oppose an amendment to a planned unit development (PUD) for which respondent FP-35 Partners applied and which the City of Portland's hearings officer approved. The city had approved the original preliminary development plan in 1981 and granted final approval of the original plan in 1984. The amendment was sought in 1991. Between the time of the approval of the original plan and the application for the amendment, the city adopted PCC Chapter 33.299, which regulates the "disturbance of forests." PCC 33.299.030(C) prohibits "[c]utting, damaging, or removing vegetation" in forests. However, PCC 33.299.040(F) excepts from the prohibition "[a]ny activity authorized by a land use decision accepted and recorded before the effective date of this ordinance."

The city hearings officer concluded that the approval of the original PUD plans in the 1980's brought the tree and vegetation removal that would take place under the amended plan within that exception. She explained, *inter alia*:

"The area to be developed under the amended plan includes less of the forested area than under the originally approved PUD. Fewer trees will be removed and the structures have been consolidated to reduce the area to be disturbed. All the development activity that will disturb forest area was approved in that original approval.

"The applicant will be developing under the amended development plan, which was approved as a separate land use permit from the original development. However, the 'activity' that will include removing vegetation and cutting trees was approved in the original PUD development plan. * * * The amended permit allows no activity that was not previously approved. The fact that the minor amendment is processed as a separate land use permit does not change the fact that the 'activity' that includes disturbing the forest was approved in 1981, before Chapter 33.299 was in effect."

Petitioners appealed the hearings officer's decision to LUBA and, in turn, to us.[1] *Gage v. City of Portland*, 25 Or LUBA 499, *rev'd* 123 Or App 269, 860 P2d 282, *on recon* 125

---

[1] An earlier appeal was taken to LUBA in connection with this application, but is not independently pertinent to our analysis or disposition here. *Gage v. City of Portland*, 24 Or LUBA 47 (1992).

Or App 199, 866 P2d 466 (1993). Although both LUBA and we accepted some of petitioners' arguments and remanded the city's decision, we rejected their contention that the hearings officer's interpretation of PCC 33.299.040(F) should not be afforded the deferential standard of review defined in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). The Supreme Court allowed review and reversed LUBA and our holdings on that point, concluding that *Clark* required and allowed deference to local interpretations of local land use legislation only if the interpretations are rendered by or attributable to the local governing body. *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994). *See Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995). The Supreme Court held in *Gage* that "this matter must be remanded to LUBA, so that LUBA can determine in the first instance, and without according the deference required by *Clark*, whether the hearings officer '[i]mproperly construed the applicable law,' *viz,* PCC section 33.299.040(F)." 319 Or at 317.

On remand, LUBA did so and sustained the hearings officer's interpretation of the section. It concluded that PCC 33.299.040(F) allows "development approvals issued prior to the effective date of PCC chapter 33.299 to be amended, so long as *no additional* vegetation disturbance in forested areas * * * is approved." (Emphasis in original.) LUBA also observed, in a footnote, that petitioners had failed to challenge certain language in the hearings officer's order that LUBA regarded as factual findings and that were to the effect that the amended "plan does not allow any forest disturbance that was not approved in the original approvals." The footnote implied that certain aspects of petitioners' interpretational arguments were foreclosed by their failure to assign error to the findings.

■ Petitioners seek our review. Preliminarily, we will describe the review methodology that we will apply in the aftermath of the Supreme Court's *Gage* opinion in cases where an interpretation by a local entity other than the governing body is challenged. LUBA concluded, and we agree, that the appropriate standard is the one we articulated in *McCoy v. Linn County*, 90 Or App 271, 752 P2d 323 (1988). We said there that the meaning of local land use legislation is

a question of law for LUBA and the reviewing courts to decide, without according any *deferential* weight to the local body's interpretation. The same plenary standard applies to our review of LUBA's interpretation of the legislation. *Reusser v. Washington County*, 122 Or App 33, 857 P2d 182, *rev den* 318 Or 60 (1993).

We use the term "deferential" in the preceding paragraph as a term of art, which means that the reviewing tribunal is *required* to give some level of acceptance to the lower body's interpretation that is not dependent on the intrinsic merits of that interpretation. However, nothing that we have said implies that, in arriving at our own interpretations, we will not fully consider the interpretations of the local entities and LUBA, with the respectful attention that our regular and frequent review of their decisions has demonstrated to us is due them.

■■ In performing the review and interpretive functions that we have described, we will insist that the parties adhere to applicable rules of preservation, and that a party challenging a local interpretation or one by LUBA must particularize why the interpretation is incorrect or how the local provision should be interpreted instead. Although the task of interpretation in cases such as this is ours, we will not reverse a lower body's interpretation on grounds that that body was not given any required opportunity to consider. *See* ORS 197.763. As we said in *Pacificorp v. City of Ashland*, 89 Or App 366, 370, 749 P2d 1189, *rev den* 305 Or 594 (1989): ·

> "Although it is correct that courts should not make the parties' arguments for them, it is equally correct that the parties cannot compel a court to misconstrue a statute by arguing only incorrect interpretations of it. The balance between those principles is not always easy to strike. The appropriate answer might sometimes be that a party which would benefit from a statute if it were correctly construed, but which does not urge that construction, is not entitled to prevail."

Nevertheless, because we are in no sense bound by the local interpretation or that of LUBA, we are free to affirm the decision on grounds that have been properly preserved and presented, even if they differ from the grounds for the local body's or LUBA's conclusions. In the last analysis, we do not

affirm or reverse an *interpretation per se*; we affirm or reverse a *decision* that may be supportable under an interpretation of ours that differs in some respects from the local interpretation or LUBA's.

Petitioners' argument here focuses largely on the footnote in LUBA's opinion, rather than the text, and posits that LUBA wrongly "interpreted petitioner[s'] challenge of the hearings officer's interpretation of PCC 33.299.040(F) as being an evidentiary challenge" rather than the legal contention it was. Petitioners then define what they understand their argument to LUBA to have been:

"Petitioners argued that the hearings officer had misapplied and misinterpreted the applicable law in failing to determine whether the 1991 PUD modification proposed a different development than had been approved in 1981, *i.e.*, one that would disturb different trees than would have been disturbed by the underlying PUD approved in 1984. Petitioners argued that the modified PUD would affect different trees than would have been affected under the original PUD. As such, the modification required an entirely new PUD application—a mere modification would not do. Thus, the exception provided for in PCC 33.290.040(F) did *not* apply.

"The hearings officer, in fact, made no findings addressing the issue of whether different trees were involved in the PUD modification as opposed to the original 1981 PUD approval. The hearings officer misinterpreted PCC 33.299.040(F) as requiring an entirely different analytical approach. Instead she concluded that the same 'development' was involved in both the original PUD approval and the proposed modification, and both required some trees to be cut. Her analysis, and LUBA's affirmance of that analysis, improperly ignored the fact that PCC 33.299.040(F) required an assessment of whether the modification proposed to cut the *same* trees as would have been cut under the original PUD. Because of this interpretation of law, there was no factual finding for petitioners to challenge." (Emphasis petitioners'.)

Later in their brief, petitioners amplify:

"The hearings officer did not find, and it would have been silly to find, that the original PUD plan and the amended PUD plan have the same physical layout or impact on the land, or affect the same trees, or that no tree will be cut under the amended plan that would not have been cut under the

original plan. Such a finding would directly contradict other findings and evidence, not to mention the essential point of the proposal, which was to develop the property with a new physical organization, including a new layout of the buildings * * *. Petitioners accept that the amended plan will disturb fewer trees than the original plan and that perhaps most or nearly all of the trees to be disturbed by the new plan would have been disturbed by the original plan. The point is that the applicant cannot impose a new physical design configuration on the land, a configuration that requires a separate and distinct land use decision, and then argue that the new actions on the land that have been authorized are not a new 'activity' on the land, that the proposed activities have not changed and that the original land use decision applied to exempt the new activity from scrutiny under the now effective forest disturbance prohibition. Interpretive discretion does not extend so far as to interpret away the plain meaning of an 'activity,' especially when the applicant proposes new actions on the land that it cannot undertake without a new land use decision."

■ Petitioners' argument appears to make two points: That "activity," as used in PCC 33.299.040(F), pertains generally to the overall design of the PUD, not *just* the impact of the development on trees and the forest; and that, as the term bears directly on trees and the forest, it relates to the specific trees that will be cut or disturbed by the development, not just the total level of the disturbance. In the latter connection, petitioners assert, basically, that some trees that would not have been disturbed under the original plan may be cut pursuant to the new one.

In the context of PCC chapter 33.299, which regulates "the disturbance of forests," we agree with the hearings officer and LUBA that the "activities" excepted by PCC 33.299.040(F) refer to the aspects of developmental or other actions that have an impact on the trees and other forest-related resources that the chapter protects. Accordingly, we do not agree with the variation of petitioners' argument that focuses on the changed nature of the planned development in itself as the "activity," to the extent it does not have forest-related effects.

Petitioners' emphasis on the fact that the amendment requires a new land use decision is also misdirected. The

"activity" that PCC 33.299.040(F) allows is, in clear terms, one that was authorized by a prior land use decision. The fact that an amendment requires a new decision does not in itself make PCC 33.299.040(F) inapplicable.

■     The second variation of the argument—that the same trees are not necessarily affected by the amended plan and the original one—is more on point. However, we are unable to agree with petitioners that the "activity" contemplated by PCC 33.299.040(F) may be so narrowly interpreted as to require that the impacts of the original and amended plans have an absolute and total equivalency in the trees that they affect. It is noteworthy in that regard that paragraph (D) of PCC 33.299.040 exempts from the prohibition of PCC 33.299.030 the "[c]utting or removing of any tree by the City Forester for reasons of safety[.]" Conversely, where the word "activity" is used in PCC 33.299.040, a broader range of conduct is contemplated than the cutting of a particular tree or trees. *See, e.g.*, paragraph (E) ("activity necessary to protect or maintain an existing improvement"); paragraph (G) ("activity authorized by a public works permit"); paragraph (H) ("activity authorized by a tree planting, pruning, or removal permit"). That context is contrary to petitioner's suggested interpretation that paragraph (F) of the same section applies to specific trees, rather than to "activities" that have a generalized or broader effect on trees and forests.

We might agree that, if the amended plan entailed *significant or extensive* changes in the area of cutting and removal operations from those authorized by the approval of the original plan, PCC 33.299.040(F) would be inapplicable, even if the overall amount of disturbance were reduced. However, petitioners agree that that is not the situation. They expressly "accept that the amended plan will disturb fewer trees than the original plan and that perhaps most or nearly all of the trees to be disturbed by the new plan would have been disturbed by the original plan."

To summarize, our interpretation of PCC 33.299.040(F) differs from that of the hearings officer and LUBA, if at all, in only one particular: that a significant change in the location and identity of the affected trees, independently of any increase in the actual number of affected trees, could render PCC 33.299.040(F) inapplicable

to tree and vegetation removals authorized by a land use decision that predated the ordinance. However, that difference is of no potential dispositional significance here, because petitioners agree that the facts that might make it so are not present.

■    Because we decide the case on the basis of our interpretation of the ordinance, it is unnecessary for us to decide whether petitioners' argument would also fail because of any failure on their part to challenge any pertinent findings of fact.[2]

Affirmed.

---

[2] We are mindful that, in the usual situation, that failure might be regarded as a preservation problem that could foreclose us from reaching some or all of the interpretational issues. In this case, however, the Supreme Court's remand to LUBA was for the express purpose of addressing the latter issues. The LUBA opinion that the Supreme Court had before it in *Gage,* like the one before us now, specifically mentioned the preservation problem. *Gage v. City of Portland, supra,* 25 Or LUBA at 461. The court presumably was mindful of the circumstances in fashioning its remand.