Argued and submitted January 9, affirmed April 2, 2014

## SELLWOOD-MORELAND IMPROVEMENT LEAGUE,
Renate Powell, and Andrea Muir,
*Petitioners below,*

*and*

## Lisa BROWN,
Andrea Raven, Denise Kelsey, George Wolters,
Phyllis Boyer, Carey Smith, Devon Carberry,
Todd Benson, Sharon Benson, Beth Kluender,
Cassandra Zimmerman, and Mary Chris Mass,
*Petitioners,*

*v.*

## CITY OF PORTLAND;
BAMA Design;
and Moreland Station Apartments, LLC,
*Respondents.*

Land Use Board of Appeals
2013052; A155409

324 P3d 549

Andrew H. Stamp argued the cause for petitioners. With him on the brief was Andrew H. Stamp, P.C.

Linly F. Rees, Senior Deputy City Attorney, argued the cause and filed the brief for respondent City of Portland.

Christe White argued the cause for respondents BAMA Design and Moreland Station Apartments, LLC. With her on the brief were Steven Hultberg and Radler White Parks & Alexander LLP.

Before Wollheim, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

The Portland Design Commission (design commission) approved a design review proposal from respondents BAMA Design and Moreland Station Apartments, LLC (collectively, Moreland) for a 68-unit apartment building in the Sellwood-Moreland neighborhood within the City of Portland (the Moreland proposal). The Moreland proposal included a transfer of 34 units from an adjacent site, known as a density transfer, to increase the maximum number of dwelling units that the applicant could develop at the site. Petitioners appealed the design commission's decision to the Land Use Board of Appeals (LUBA), and LUBA affirmed. On judicial review, petitioners advance two assignments of error. First, petitioners contend that LUBA erred in determining that Portland City Code (PCC) 33.120.205(E)—the city's general authorization of density transfers between sites in multi-dwelling zones—governed the density transfer in this case rather than PCC 33.537.110(B)—the city's authorization of density transfers between sites in the Johnson Creek Basin Plan District (JCB Plan District), where the proposed apartment building was located. Second, petitioners contend that LUBA erred in determining that, because the density transfer was governed by PCC 33.120.205(E), the planned-development review procedures and approval criteria in PCC 33.537.110(B)(4) and (5) were inapplicable. For the reasons stated below, we affirm.

Because it provides context for LUBA's decision and the parties' contentions on review, before turning to the facts, we describe the regulatory provisions that inform the legal issues in this case.

The city has five general categories of "base zones," two of which are relevant to this case—"multi-dwelling residential" and "single-dwelling residential" zones. For multi-dwelling zones, there are six different categories that are distinguished by maximum density amounts (the number of dwelling units or floor area ratio) and development standards. PCC 33.120.010(B). PCC 33.120.205(E) allows density transfers between sites in multi-dwelling zones, allowing the sending site to decrease and the receiving site to

increase its maximum density amounts. That regulation provides, in part, as follows:

"**E.    Transfer of density or FAR.** Density or [Floor Area Ratio (FAR)] may be transferred from one site to another subject to the following:

"* * * * *

"2.    Maximum increase in density or FAR. In the RH and RX zones, an increase in FAR on the receiving site of more than 3 to 1 is prohibited. In all other R zones, an increase in the number of units of more than 100 percent of the receiving site is prohibited."

PCC 33.120.205(E)(2) (boldface in original). In addition, PCC 33.120.205(E)(4) requires that density transfers must be between sites "within a block or between sites that would be abutting except for a right-of-way." Although multi-dwelling base zone regulations allow density transfers, the single-dwelling base zone regulations do not allow density transfers from sites or between sites in single-dwelling zones. *See generally* PCC 33.110 (single-dwelling residential zone regulations).

The city also has several plan districts, which "provide a means to modify zoning regulations for specific areas," and "address concerns unique to an area when other zoning mechanisms cannot achieve the desired results." PCC 33.500.010. The JCB Plan District regulation governing density transfers, PCC 33.537.110(B), is at issue in this case. That regulation provides:

"**B.    Regulations.** Transfer of development rights between sites in the plan district is allowed as follows. 'Development rights' are the number of potential dwelling units that would be allowed on the site. Bonus density is not transferable.

"1.    Sending sites.

"a.    Sites in single-dwelling zones where at least 50 percent of the site is within the Environmental Protection overlay zone may transfer development rights.

"b.    Sites in single-dwelling zones where any portion of the site is in the special flood hazard area may transfer development rights.

"2.   Receiving sites. All sites within the Johnson Creek plan district may receive development rights from sending sites except:

"a.   Portions of a receiving site that are in either a "c" or "p" Environmental overlay zone;

"b.   Sites where any portion of the site is in the special flood hazard area; and

"c.   Portions of a receiving site in Land Class I or II within the South subdistrict. Land Class I and II are defined in Section 33.537.140.E, Maximum Density for Land Divisions and Planned Developments.

"3.   Maximum density. The density of the receiving site may not exceed 200 percent of the allowable density.

"4.   Transfer procedure. Transfer of development rights is allowed as follows:

"a.   Planned Development (PD) required. The receiving site must be approved for development as a PD. The purpose of the PD review is to ensure that the extra density is developed appropriately on the receiving site according to the requirements and approval criteria of this subsection and the approval criteria in Chapter 33.665, Planned Development Review.

"b.   Sending site included. The sending site must be a part of the application for PD review on the receiving site. The purpose of this requirement is to allow the City to track the reduced development potential on sending sites.

"c.   Covenant required. The owner of the sending site must execute a covenant with the City that reflects the reduced development potential on the sending site. The covenant must meet the requirements of 33.700.060. The covenant must be recorded within 90 days of the PD approval, or if the PD includes a land division, before the Director of BDS's approval of the final plat.

"5.   Approval Criteria. In addition to the PD approval criteria in Chapter 33.665, Planned Development Review, the transfer will be approved when the review body finds that all the following approval criteria have been met:

"a.   A PD proposed for the site that includes the transferred density has been approved; and

"b.   The owner of the sending site has executed a covenant with the City that reflects the reduction in potential density for the sending site.

"6.   Adjustments prohibited. Adjustments to the provisions of this section are prohibited."

PCC 33.537.110(B) (boldface in original). Thus, PCC 33.537.110(B) allows density transfers from certain sites in single-dwelling zones to other sites within the JCB Plan District, so long as the sites meet the criteria in subsections (1) and (2), and requires that density transfers apply the planned development review procedures and approval criteria in subsections (4) and (5).

Generally, plan districts may overlap base zones, and plan district regulations are applied in "conjunction" with base zone regulations. PCC 33.500.030. At the same time, plan district regulations can modify portions of the base zone regulations and "apply additional requirements or allow exceptions to general regulations." *Id*. However, the city provides rules for when regulations between the plan districts and base zones conflict. Two regulations address the rules for when plan district regulations conflict with base zone regulations: PCC 33.700.070 (the general rules for application of the code language) and PCC 33.500.040 (the plan district rules for relationship to other regulations). As relevant here, PCC 33.700.070(E) provides, in part:

"1.   Different levels of regulations. In general, an area with base zoning, overlay zoning, or an area in a plan district is subject to all the regulations of each. * * *

"When the regulations conflict, unless specifically indicated otherwise, the following rules apply:

"a.   The regulations in a plan district supersede regulations in overlay zones, base zones, and regulations in the 600s series of chapters."

PCC 33.700.070(E)(1)(a). Similarly, PCC 33.500.40 provides:

"When there is a conflict between the plan district regulations and base zone, overlay zone, or other regulations of this Title, the plan district regulations control. The specific regulations of the base zone, overlay zones, or other regulations of this Title apply unless the plan district provides other regulations for the same specific topic."

With that regulatory context in mind, we now turn to the facts of this case. The subject property (Moreland property) is a 33,948 square-foot tract (approximately three-quarters of an acre) in a Residential 1,000 (R1) multi-dwelling base zone and in a design "d" overlay zone. Generally, an R1 zone is a medium density multi-dwelling residential zone that allows approximately 43 dwelling units per acre. PCC 33.120.030(C). However, the Moreland property, which is less than one acre, is allowed a maximum density of only 34 dwelling units. The Moreland property is also located in the JCB Plan District. As explained above, the city has base zone or overlay regulations, which are applied city-wide, *see* PCC 33.500.010, and special regulations that apply only to sites within the JCB Plan District, *see* PCC 33.537.

In 2012, Moreland applied to build a 68-unit apartment building in the JCB Plan District. Because Moreland was only allowed to develop 34 dwelling units, Moreland requested a density transfer for an additional 34 residential units from an adjacent property in the R1 multi-dwelling zone. The city mailed a notice of the Moreland proposal to the residents of the Sellwood-Moreland neighborhood, and petitioners filed responses to the proposal. The city staff approved the Moreland proposal, which included the transfer of 34 units from an adjacent site. Petitioners appealed that approval to the design commission, and the design commission approved the proposal.

Petitioners then appealed the design commission's decision to LUBA. Before LUBA, petitioners advanced five assignments of error, two of which are relevant to our review. First, petitioners contended that the design commission erred in determining that PCC 33.120.205(E) (the multi-dwelling base zone density transfer regulation) applied rather than PCC 33.537.110(B) (the JCB Plan District density transfer regulation). Specifically, petitioners contended that, in their view, PCC 33.537.110(B)'s phrase, "[t]ransfer of development rights between sites in the plan district is allowed as follows[,]" means that density transfers in the JCB Plan District are governed by that provision and that, because both PCC 33.537.110(B) and PCC 33.120.205(E) govern the same specific topic, *i.e.*, density transfers, the two regulations conflict and, therefore, the JCB Plan District

regulation controls over the multi-dwelling base zone regulation. Second, petitioners contended that, even if PCC 33.120.205(E) governs the density transfer, the design commission erred in failing to require planned development review and approval criteria because they are required for all density transfers within the JCB Plan District. *See* PCC 33.537.110(B)(4), (5).

LUBA affirmed the design commission's decision, concluding that the design commission properly applied PCC 33.120.205(E) because that provision governs multi-dwelling zone density transfers and does not conflict with PCC 33.537.110(B), which governs only single-dwelling zone density transfers within the JCB Plan District. In support of its conclusion, LUBA explained that the text of PCC 33.537.110(B) demonstrates that it is a nonexclusive grant of authority rather than a limitation:

> "Read in isolation, the phrase 'transfer of development rights between sites in the plan district is allowed as follows' can be read to suggest that transfers are allowed *only* as follows, but that preclusive reading is not compelled by the actual text, which does not include the modifier 'only.' The text of PCC 33.537.110(B) does not expressly state that the following provisions are the exclusive vehicle of transfers within the Plan District, or that other transfer provisions that would apply by their own terms are precluded."

(Emphasis in original.) LUBA further explained that its understanding of PCC 33.537.110(B) was supported by the regulation's context, specifically PCC 33.537.110(A), which provides that subsection (B) is intended to preserve development opportunities for new housing and reduce development pressures on environmentally sensitive sites.

In addition, LUBA rejected petitioners' challenge to design review procedures that the city had followed in approving the Moreland proposal. LUBA reasoned that, because the density transfer was governed by PCC 33.120.205(E), planned development review and approval criteria under PCC 33.537.110(B)(4) and (5) were not required.

Petitioners now seek judicial review of LUBA's final order, reprising their arguments made below to LUBA concerning the proper construction and application of the

pertinent code provisions. We review LUBA's order to determine whether the order is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). In doing so, we give no deference to the design commission's or LUBA's construction of those provisions. *Gage v. City of Portland*, 319 Or 308, 317, 877 P2d 1187 (1994); *Gage v. City of Portland*, 133 Or App 346, 349-50, 891 P2d 1331 (1995) (explaining that we give no deference to the interpretations of a local government's land use regulations made by LUBA or by any decision-maker other than the governing body of that local government); *see Gould v. Deschutes County*, 233 Or App 623, 629, 227 P3d 758 (2010) ("In interpreting the county code, we give no deference to the interpretation made by the hearings officer or by LUBA."). Instead, we apply the ordinary principles of statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), and determine the city's intent in enacting the pertinent code provisions by examining the text, context, and any helpful enactment history.[1] *Gaines*, 346 Or at 171-72.

Petitioners first assign error to LUBA's determination that the design commission properly approved a density transfer pursuant to PCC 33.120.205(E), even though the property at issue is within the JCB Plan District. Petitioners contend that, although PCC 33.120.205(E) allows density transfers between sites in multi-dwelling zones, PCC 33.537.110(B) supersedes PCC 33.120.205(E) and provides the exclusive means for density transfers between sites within the JCB Plan District. In support of that argument, petitioners point to the first sentence in PCC 33.537.110(B), which states, "[t]ransfer of development rights between sites in the plan district is allowed as follows." Petitioners assert that the phrase "as follows" is language of exclusivity, meaning that only sites that meet the criteria of PCC 33.537.110(B)(1) and (2) can transfer density in the JCB Plan District. Petitioners also observe that PCC 33.537.110(B) identifies sending sites as sites "in single-dwelling zones" and receiving sites as "[a]ll sites" in the JCB Plan District.

---

[1] The parties do not provide, and we have not found, any pertinent enactment history. For that reason, our interpretation is limited to the text and context of the pertinent code provisions.

That distinction, petitioners contend, indicates that the city intended to preclude sites in multi-dwelling zones from qualifying as sending sites but to allow them to qualify as receiving sites.

We find neither of petitioners' textual arguments to be persuasive. Contrary to petitioners' reading, the phrase "is allowed as follows" does not expressly preclude density transfers between sites in multi-dwelling zones in the JCB Plan District. Instead, PCC 33.537.110(B) *allows* density transfers from certain sites in single-dwelling zones, where density transfers would not otherwise be authorized under the base zone regulations. Further, the fact that PCC 33.537.110(B) allows density transfers from sending sites "in single-dwelling zones" does not demonstrate that the city intended to preclude density transfers that are permitted under other city regulations.

The context of PCC 33.537.110(B) provides further support for that understanding. Generally, "[p]lan district regulations are applied in conjunction with a base zone[,]" and "may apply additional requirements or allow exceptions to general regulations." PCC 33.500.030. Without express language of limitation to indicate otherwise, PCC 33.537.110(B) operates as an additional means of transferring density between sites in the JCB Plan District.

Further, the purpose statements in the JCB Plan District regulations, specifically PCC 33.537.010 (the general purpose statement) and PCC 33.537.110(A) (the transfer of development rights purpose statement), provide contextual guidance. *See Warburton v. Harney County*, 174 Or App 322, 329, 25 P3d 978, *rev den*, 332 Or 559 (2001) ("While it is true that a policy statement * * * should not provide an excuse for delineating specific policies not articulated in the statutes, such a general purpose statement may serve as a contextual guide for the meaning of a particular statute."). The JCB Plan District's general purpose statement explains, "At certain locations, the density of development is limited by applying special regulations to new land division proposals. * * * At other locations, *development is encouraged and mechanisms are included that provide relief from environmental restrictions*." PCC 33.537.010 (emphasis added).

The JCB Plan District's transfer of development rights provision explains that the purpose of allowing density transfers is to "preserve development opportunities for new housing and reduce development pressure on environmentally sensitive sites." PCC 33.537.110(A). Taken together, those purpose statements suggest that PCC 33.537.110(B) was enacted, in part, to allow density transfer from certain sites in single-dwelling zones—where density transfers would not otherwise be authorized—to encourage development by providing relief from environmental overlay and flood hazard area restrictions.[2]

Thus, as did LUBA, we conclude that PCC 33.537.110(B) is not the exclusive means for density transfers between sites within the JCB Plan District. Having so concluded, PCC 33.120.205(E) can be applied unless it conflicts with PCC 33.537.110(B).

As previously explained, base zone regulations—including PCC 33.120.205(E)—apply to sites in plan districts unless the plan district regulation governs the "same specific topic" and conflicts with the base zone regulation. PCC 33.500.040; PCC 33.700.070(E)(1)(a). The code does not define "conflict," and, therefore, we apply its plain meaning. *See* PCC 33.700.070(D)(1) ("Words used in the zoning code have their dictionary meaning unless they are listed in Chapter 33.910[.]"). The intransitive verb "conflict" means "to show variance, incompatibility, irreconcilability, or opposition : evidence variance or disharmony calling for adjustment, harmonizing, bringing into accord." *Webster's Third New Int'l Dictionary* 477 (unabridged ed 2002).

Petitioners contend that PCC 33.537.110(B) and PCC 33.120.205(E) are incompatible or irreconcilable because they govern the same specific topic—*viz.*, density transfers. We disagree. Although PCC 33.537.110(B) and PCC 33.120.205(E) both regulate density transfers, those provisions do not govern the "same specific topic." As we have

---

[2] Petitioners assert that density transfer is a "valuable commodity" and that the city "made an express policy choice to increase the value of the transferable rights for certain landowners by limiting the supply of potential sending sites to those sites in single-dwelling zones[,]" relying on law review articles on market viability for support. We reject that argument because it is not supported by the text, context, or enactment history of PCC 33.537.110(B).

explained, PCC 33.537.110(B) governs density transfers in the Plan District from *sites in single-dwelling zones* that are in environmental overlay zones or flood hazard areas, whereas PCC 33.120.205(E) governs density transfers throughout the city between *sites in multi-dwelling zones.* There is no situation in which both PCC 33.537.110(B) and PCC 33.120.205(E) would apply to the same sending site within the JCB Plan District, because a sending site can be located either in a single-dwelling zone or a multi-dwelling zone, but never both.[3] Thus, there is no conflict between PCC 33.537.110(B) and PCC 33.120.205(E). Accordingly, LUBA did not err in affirming the design commission's approval of the density transfer pursuant to PCC 33.120.205(E).

We now turn to petitioners' second assignment of error. Petitioners assert that LUBA erred in determining that the design commission was not required to apply the planned development review procedures and approval criteria required by PCC 33.537.110(B)(4) and (5) to the Moreland proposal. We have quoted PCC 33.537.110(B)(4) and (5) above, 262 Or App at 12-14, and the text and context of those regulations indicate that the planned review procedures and approval criteria only apply to density transfers authorized under PCC 33.537.110(B).

By its terms, the purpose of PCC 33.537.110(B)(4)'s requirement for planned development review is to ensure that the added density is developed "according to the requirements and approval criteria *of this subsection.*" (Emphasis added.) And, PCC 33.537.110(B)(4) and (5) are part of the same subsection of regulations that authorize density transfers under PCC 33.537.110(B)(1) and (2). Thus, as did LUBA, we conclude that, because the density transfer was approved under PCC 33.120.205(E), the planned development review

---

[3] PCC 33.700.070(E)(2) provides an example of when two regulations both apply to the same site and conflict:

"An example would be the parking space requirement for houseboats in moorages, two spaces per unit, which is stated in the Floating Structures chapter. *** [And] the standard residential requirement of one space per unit stated in the Parking chapter."

Although PCC 33.700.070(E)(2) discusses the rules for when regulations "at the same level" conflict (*e.g.,* two plan district regulations), that example provides some insight as to when two regulations are incompatible or irreconcilable.

procedures and approval criteria in PCC 33.537.110(B)(4) and (5) do not apply.

Affirmed.