Argued and submitted January 9, reversed and remanded March 25, 2020

SIMONS INVESTMENT PROPERTIES, LLC,
and Carlton B. Simons,
*Respondents,*

*v.*

CITY OF EUGENE,
*Petitioner.*

Land Use Board of Appeals
2019068; A172687

463 P3d 57

The City of Eugene seeks review of a Land Use Board of Appeals (LUBA) order that reversed the city's decision on an application for a zone change. Simons Investment Properties, LLC (Simons Investment) sought a determination from the city that the /SR Site Review overlay zone (/SR overlay) did not apply to 10 properties located in the Whiteaker neighborhood, or, alternatively, that the /SR overlay should be removed from those properties. The city determined that the /SR overlay applied and denied Simons Investment's application for a zone change. Simons Investment appealed to LUBA, and LUBA remanded to the city, concluding that the /SR overlay did not apply to the subject properties. *Held*: LUBA erred in its construction of the Eugene Code. Applying usual standards of statutory interpretation to the code, the Court of Appeals concluded that the /SR overlay does apply to the subject properties.

Reversed and remanded.

Emily N. Jerome argued the cause and filed the brief for petitioner.

Bill Kloos argued the cause for respondents. Also on the brief was Law Office of Bill Kloos PC.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

The City of Eugene seeks review of a Land Use Board of Appeals (LUBA) order that reversed the city's decision on an application for a zone change. Simons Investment Properties, LLC (Simons Investment) sought a determination from the city that the /SR Site Review overlay zone (/SR overlay) did not apply to 10 properties located in the Whiteaker neighborhood, or, alternatively, that the /SR overlay should be removed from those properties. The city determined that the /SR overlay applied and denied Simons Investment's application for a zone change. Simons Investment appealed to LUBA, raising two assignments of error. LUBA remanded to the city based on the first assignment of error, concluding that the /SR overlay did not apply to the subject properties. LUBA did not address Simons Investment's second assignment of error. We review LUBA's order to determine if it is "unlawful in substance," ORS 197.850(9)(a), and conclude that LUBA erred in its construction of the Eugene Code. Applying our usual standards of statutory interpretation, we conclude that the /SR overlay does apply to the subject properties. Accordingly, we reverse LUBA's order and remand the case to LUBA for it to consider Simons Investment's remaining assignment of error.

The subject properties in this case are 10 lots located in the Whiteaker neighborhood of the city. The "Whiteaker Plan," which is a refinement plan that was first adopted by the city in 1978, applies to those properties. In 1994, the city adopted two ordinances that affected that plan and the subject properties.

Ordinance 19979 created the MU-W Whiteaker Mixed Use District zoning and created standards applicable to that zoning. Ordinance 19978 amended the Whiteaker Plan, which was the culmination of a two-year process to update the 1978 plan. Among other things, the 1994 Whiteaker Plan amended several parts of the plan to apply "Site Review" to properties in the neighborhood. One of those amendments provided: "Also apply Site Review to all properties zoned MU-W Whiteaker Mixed Use[.]"

Also in 1994, in a final rezoning order, the city applied the MU-W zone and SR Site Review subdistrict zone

to specific properties in the Whiteaker neighborhood, including the subject properties, such that the zoning designation for those properties became MU-W/SR.[1] That order also updated the Eugene zoning maps to reflect that zone change, including the SR subdistrict zoning on the subject properties. Exhibit B to that final order set out the "Site Review Trigger" and the "Site Review Criteria" that applied to the rezoned properties. The Eugene Code in 1994 also contained provisions for "Site Review Procedures," which set out the purpose of site review subdistricts, the procedure and criteria for applying a site review subdistrict to a property, and the procedure for obtaining site plan approval. EC 9.686 - 9.694 (1996), *repealed by* Ordinance 20224 (Feb 26, 2001).

Around the same time, the city also initiated an effort to update its entire land use code, which was passed by the city in 2001, and finalized in 2002, after a remand from LUBA of the original ordinance. That updated code is referred to as the Land Use Code Update (LUCU). The LUCU repealed and replaced Chapter 9 of the Eugene Code. It also repealed certain ordinances, including Ordinance 19979, which had created the MU-W zone. As part of the update, the LUCU includes lists of the zone and overlay zone titles used in the city. EC 9.1030 sets out all the base zone titles established by the LUCU, some of which were not reclassified, but were titles carried over from the "use districts" established in the old code. *Compare* EC 9.268(a) (1996), *repealed by* Ordinance 20224 (Feb 26, 2001) (establishing "use districts"), *with* EC 9.1030 (establishing "zones"); *see also* EC 9.100 (referring to zones as "base zones"). For base

---

[1] The Eugene Code provided that site review would be indicated as an "SR" suffix in zoning designations:

"SR site review sub-district.  Pursuant to the provisions of sections 9.688 through 9.694 a sub-district may be created within any district listed in this Comprehensive Zoning Ordinance when considered necessary according to the purpose for site review as stated in section 9.686. The sub-district shall be designated by the suffix 'SR' added to the symbol of the parent district. All uses permitted in the parent zone shall be allowable in this site review sub-district; provided, however, that a site review approval must be secured by the proper procedure prior to the issuance of a building permit for construction in this sub-district."

EC 9.268(d) (1996), *repealed by* Ordinance 20224 (Feb 26, 2001).

zones that were reclassified by the LUCU, EC 9.1045 sets out a table showing the old title and the new title for those reclassified zones. The MU-W zone was reclassified as the S-W Whiteaker Special Zone Area (S-W).

EC 9.1040 sets out the overlay zone titles established by the LUCU, most of which were titles carried over from the subdistricts established in the old code. *Compare* EC 9.268(b) - (i) (1996), *repealed by* Ordinance 20224 (Feb 26, 2001) (establishing "sub-districts"), *with* EC 9.1040 (2001) (establishing "overlay zones"). The /SR overlay is listed in EC 9.1040, but as explained above, the SR subdistrict existed in the old code. *See* EC 9.268(d) (1996). The LUCU also included a section titled "Site Review" that is at EC 9.8425 to 9.8455.

The LUCU did not repeal Ordinance 19978, which was the ordinance that amended the Whiteaker Plan to require site review for properties zoned MU-W, nor did it purport to affect the final rezoning order of the city that applied the MU-W zone and SR site review subdistrict to the subject properties and updated the Eugene zoning maps to reflect those changes.

With that background in place, we turn to the land-use application at issue in this case. According to the city, after adoption of the LUCU, the subject properties are zoned S-W/SR. In 2019, Simons Investment filed an application with the city for a zone change to remove the /SR overlay from the subject properties. The application was heard by the city's hearings official. Simons Investment argued, in conjunction with its zone change application, that the /SR overlay did not apply to the subject properties, because that overlay zone was a new zoning created in 2001 that had not been applied to the properties by the city. The hearings official determined that the /SR overlay applied to the properties and denied the zone change application. Simons Investment appealed that decision to the Eugene Planning Commission. EC 9.7650.

The planning commission issued a final order that determined that the /SR overlay applied to the subject properties and denied Simons Investment's zone change

application. With regard to the application of the /SR overlay to the subject properties, the commission determined:

> "The Planning Commission agrees with the Hearing Official's determination. The Planning Commission finds that when the Whiteaker Refinement Plan was adopted in 1994, the City Council adopted Ordinance No. 19978 applying the /SR Site Review Subdistrict to the subject properties as required by the Whiteaker Refinement Plan. The Planning Commission further finds that nothing in Ordinance No. 20224 or LUCU affirmatively removed the previously applied site review requirements from the subject properties. The legislative history surrounding LUCU, previously adopted ordinances, and adopted Eugene Code (with relevant excerpts provided as part of the record materials for consideration) collectively demonstrate the continuity of legislative intent to retain site review requirements (which after the adoption of LUCU, were implemented through the /SR Site Review Overlay Zone) on the subject property, consistent with the Whiteaker Plan. While it is true that the City has reformatted, renumbered, and renamed various base zones and overlays (previously referred to as districts and subdistricts in the 'old code' prior to the City's land use code update in 2001), the Planning Commission disagrees with the applicant's argument that the City somehow inadvertently removed Site Review from the subject properties. Consequently, the Planning Commission rejects the applicant's theory and affirms the Hearings Official's decision."

Simons Investment appealed the city's final order to LUBA. Based on its interpretation of the LUCU, LUBA concluded that the /SR overlay did not apply to the subject properties, because it was a new overlay zone created in 2001 that was not applied to the properties at the time of, or since, its creation. LUBA came to that conclusion based on four points outlined in its order. First, LUBA relied on the fact that the site review "subdistrict" and its associated standards were repealed, concluding that "the city's decision to repeal those standards is a strong indication that the city did not intend for the SR Subdistrict standards to have any continuing application or validity after repeal." Second, LUBA stated that the LUCU "created and contemporaneously reclassified *every* base zone from the Old Code to the New Code in the New Code Table 9.1045, and also created and contemporaneously applied six of the 10 *newly* created

overlay zones by adopting official overlay zone maps ***.[2] That action and the absence of any language in the [LUCU] either reclassifying the former subdistricts or specifically defining the overlay zone boundaries strongly suggests that the city intended that the remaining four *newly* created overlay zones would be applied at a later time[.]" (Emphases added.) Third, LUBA placed emphasis on the LUCU provision that provided that the overlay zone boundaries would be depicted on an "official" overlay zone map or in the text of the code. Finally, LUBA rejected as unpersuasive comments in a planning commission meeting on the LUCU that the overlay zones were intended as a continuation of the previous subdistricts.

The city seeks review of LUBA's order. The city's challenge turns on the correct construction of the Eugene Code and, more particularly, the effect of the LUCU on the preexisting site review that was applied to the subject properties. In addressing that challenge, we review LUBA's order to determine if it is "unlawful in substance." ORS 197.850(9)(a). Although we would ordinarily defer to a city's interpretation of its own code, ORS 197.829, that principle does not apply where, as here, the interpretation made at the city level was the interpretation of a planning commission that is subordinate to the governing body of the city.

---

[2] All of the record cites given by LUBA for this assertion are to pages in the LUCU. With the sole exception of the /TD Transit Oriented Development Overlay Zone, none of those cites are to a map, or a reference to a map, that reasonably could be interpreted as "adopting official overlay zone maps." *See* EC 9.4120 (referencing a map that sets out the Airspace Plan); EC 9.4530(3) (referencing figures that indicate parking and improvements required between buildings and streets in the /TD overlay); EC 9.4710 (referencing a map in the West Eugene Wetlands Plan for fill requirements to qualify for an exemption from /WP overlay); EC 9.4800 (explaining that the purpose of /WB overlay is to protect the wetlands identified in the West Eugene Wetlands Plan by maintaining setbacks and buffers between those wetlands and developed areas); EC 9.8805 (requiring Willamette Greenway permit applications for uses "within the boundaries of the Willamette River Greenway according to Resolution No. 2592 Adopting a Willamette River Greenway Boundary"). And, the /TD overlay zone map that was referenced and adopted with the LUCU (Map 9.4510) primarily purports to show the boundaries where different floor to area ratios apply within the /TD overlay. *See* EC 9.4510 ("(Refer to Map 9.4510 Transit Oriented Development Overlay Zone.)"); *but see* Map 9.4510 (showing a map titled "Transit Oriented Development Overlay Zone," but containing a legend only showing floor to area ratios for different shaded areas). We thus reject and do not address further this aspect of LUBA's reasoning, as it is not supported by the record.

*Hulme v. City of Eugene*, 299 Or App 76, 79 n 1, 448 P3d 705 (2019). As a result, we apply our ordinary principles of statutory construction without any deference to the planning commission's, or LUBA's, construction of the Eugene Code. *Sellwood-Moreland Improv. League v. City of Portland*, 262 Or App 9, 17, 324 P3d 549 (2014). We thus construe the code to determine the city's intent in enacting the pertinent code provisions by examining the text and context of those provisions, along with any helpful enactment history. *Id.*

Here, the question is whether the /SR overlay zoning applies to the subject properties. We thus start with the text of the code provisions that set forth when that zoning applies.

EC 9.1050 provides, with respect to zoning generally:

"Zone boundaries shall be depicted on an official map titled, 'Eugene Zoning Map.' Overlay zone boundaries shall be indicated on the 'Eugene Zoning Map,' or on an official map titled, 'Eugene Overlay Zone Map.' The text of this land use code may include a boundary description or list of uses subject to overlay zone regulations. The 'Eugene Zoning Map' and 'Eugene Overlay Zone Map' may be divided into geographic units for convenience of use and to more readily identify locations on the map. Where the text of a zone change decision or the text of this land use code specifically define boundaries (such as the TD or CAS overlay zones), conflicts between that text and the map boundaries shall be resolved in favor of the text."

In addition, EC 9.4410 provides, with respect to the application of the /SR overlay specifically:

"The /SR overlay zone applies to all property where /SR is indicated on the Eugene overlay zone map. In addition, the /SR overlay zone may be required by a refinement plan. Applications for development permits shall not be accepted by the city for development in a /SR overlay zone until the site review plan is approved according to the site review procedures in this land use code. The provisions of the /SR overlay zone supplement those of the applicable base zone or special area zone. Where the overlay zone and base zone or special area zone provisions conflict, the more restrictive requirement applies."

The plain text of EC 9.4410 provides that the /SR overlay zone applies if "/SR" is depicted on the Eugene overlay zone map or is required by a refinement plan. The 1994 rezoning order for the subject properties amended the Eugene zoning maps to zone the subject properties "MU-W/SR," and the Whiteaker Plan is a refinement plan that required site review for the subject properties. Thus, the question we must answer is whether the city intended EC 9.4410 to apply to the previously existing site review on the overlay zoning map, which was also indicated by "/SR" according to EC 9.268(d) (1996) and the 1994 rezoning of the subject properties, and to the previously existing refinement plan that required site review. We conclude based on the text, context, and enactment history of the LUCU that the city did intend that the /SR overlay would apply to that previously existing site review zoning.

First, as described above, the LUCU established "zones," many titles of which were carried over from the "use districts" titles that previously existed. Likewise, the established "overlay zones" are titles that were carried over from the "subdistricts" titles that previously existed. Contrary to LUBA's reading of the LUCU, not every base zone was reclassified in the table that appears in EC 9.1045. That table only includes those districts that were given new titles. The titles that remained the same, even though the zoning is now "zones" instead of "use districts," were not included in the reclassification table, which strongly suggests that the city intended that zones without a title change would continue as previously applied. It further suggests that the city was merely updating code language from "use district" to "zone" and "subdistrict" to "overlay zone" for those unchanged titles.

Second, nothing in the text or context of the LUCU itself indicates an intention of the city that all the zoning was entirely "new" and needed to be reapplied to be effective, particularly when such a reapplication of every base zone and overlay zone was not made contemporaneously with the enactment of the LUCU. Contrary to LUBA's statement, that lack of contemporaneous reapplication of every zone is a strong indication that the city intended that the prior zoning of titles that remained unchanged would continue. The

fact that the /SR overlay zoning designation on properties was to be indicated in exactly the same manner as the previous site review subdistrict designation—that is, with /SR attached to the base zone (or "parent zone" as it was called in 1994)—further indicates the city's intention that the /SR overlay was not "new."

Third, the LUCU contains text that indicates that the purpose of site review in the LUCU is the same as the purpose of the previous site review, further indicating that the city intended to revise and update the site review zoning as previously applied to property in the city. The old code, EC 9.686 (1996), provided:

> "Site Review - Purpose and Authority.   A site review sub-district may be created or site plan approval required as provided elsewhere in this ordinance in order *to maintain or improve the character, integrity, and harmonious development of an area or provide a safe, stable, efficient, and attractive on-site environment* according to applicable plans, policies, goals, and ordinances adopted by the council with due regard to the public and private interests involved. Site review sub-districts are governed by the regulations of the parent use district within which they are located. Building permits shall only be issued for developments in a site review sub-district if they are first approved according to the site review procedures specified in this code."

(Underscoring in original; emphasis added.) The LUCU, EC 9.8425, provides:

> "**Purpose of Site Review.**   Site review is used as a means to maintain or improve the character, integrity, and harmonious development of an area, address potential environmental impacts, and to provide a safe, stable, efficient, and attractive on-site environment."

(Boldface and underscoring in original.) In addition, the adoption of the "Site Review" standards in the LUCU does not indicate a contrary intention, but, rather, as addressed in the legislative commentary below, an intention of the city to update the existing site review with a set of consistent, revised standards.

Finally, the enactment history of the LUCU supports our construction. The legislative commentary to the

November 1999 draft LUCU indicates that the intent was to revise the existing site review and not to create a "new" zoning that had to be newly applied to property in the city. The legislative commentary to the site review section of the LUCU, EC 9.8425 to 9.8435, provides:

> "**Site Review**
>
> "When considering the current function of site review, it is clear that there are many development-related impacts which cannot be adequately addressed through the adoption of standard development requirements. Although the proposed commercial, industrial and multi-family development standards address various site design issues, they do not address other important site-specific considerations, such as preservation of natural features. Such issues typically involve individual consideration which are best served through some form of discretionary review. Given these circumstances, *site review still provides an important tool* which cannot easily be replaced by the adoption of broad-based development standards. As such, the theme of the *proposed revisions to site review* emphasize developing a more consistent and standardized form of review, and focusing on those issues which cannot otherwise be adequately addressed through clear development standards.
>
> "**9.8425   Purpose of Site Review.**
>
> "*Based on existing EC 9.686. Revised section to clarify role of site review.* Statements were included to emphasize that site review focuses on site planning issues and not on the architectural style of a building. As such, site review evaluates <u>how</u> a proposed use 'fits' on a given parcel.
>
> "**9.8430   Applicability**.
>
> "New section intended to clarify when site review is required. Currently there is no formal threshold for determining when expansion or renovation of a developed property triggers site review.
>
> "Added provision addressing State statutes related to needed housing.
>
> "**9.8435   General Requirements.**
>
> "*Based on existing EC 9.690(3).*"

(Boldface and underscoring in original; emphases added.) The legislative commentary to EC 9.8440 provides:

**"9.8440    <u>Site Review Approval Criteria - General</u>.**

*"Based on existing EC 9.688(b).* Criteria substantially modified to focus on a few key discretionary issues. The objective of the *revised site review criteria* is to:

"enable review of issues/concerns which are difficult to address through the proposed development standards (ie. commercial, industrial and multi-family standards).

"involve *streamlining of existing criteria*, thereby expediting the review process, enable neighborhood concerns to be considered.

"*standardize criteria for all future applications, which could save substantial time in investigating original zone change decisions and related site review criteria.*

"Final paragraph *clarifies that previously established site review criteria will be replaced by one set of consistent criteria.* Many of the individualized criteria created over the past several years are vague or outdated. In some cases, a substantial amount of effort is spent by staff and the applicant determining the applicable criteria for a given site. While the proposed approach will reduce the opportunity to address extremely unique, site-specific issues, the proposed criteria also provide better clarity of the issues typically associated with a site review application."

(Boldface and underscoring in original; emphases added.)

We also reject Simons Investment's arguments that the city's intention must have been otherwise based on the differences between the criteria that applies to the MU-W zone and site review, pre-LUCU, and the criteria that applies to the S-W zone and site review, post-LUCU. Those arguments may make valid points as to why the city *should* no longer apply site review to the subject properties. However, those arguments do not persuade us that the city did not intend to continue to apply site review to the subject properties by its enactment of the LUCU.

Based on the foregoing, we conclude that it was the city's intention in enacting the LUCU that the /SR overlay was an update or revision to the previously existing and applied SR subdistrict and not a "newly" enacted zoning that was not applied. As a result, the requirement for site

review in the Whiteaker Plan, and the application of /SR to the subject properties in the 1994 rezoning order, effectively applies the /SR overlay to the subject properties, under the plain text of EC 9.4410. Accordingly, LUBA's order is "unlawful in substance," ORS 197.850(9)(a), and must be reversed. We also remand to LUBA so that it may address Simons Investment's second assignment of error in its petition to LUBA in the first instance.

Reversed and remanded.